| PAUL D. BROOKS, ELLIS E. BYRD, JONATHAN E. GREENAWAY, ERICK GUILLORY, SAMUEL W. JOHNSON, WAYNE E. JOHNSON, MICHAEL SPENCER, and RICKY RUFFIN, | § § § § § § | |
|---|---|---|
| Plaintiffs, | § § | CIVIL ACTION NO. 1:12-CV-325 |
| *versus* | § § | |
| FIRESTONE POLYMERS, LLC a/k/a FIRESTONE, | § § § | |
| Defendant. | § § | |

## AMENDED MEMORANDUM AND ORDER

Pending before the court are Defendant Firestone Polymers, LLC's ("Firestone") Motions for Summary Judgment (#s 59-66). Having considered the motions, the submissions of the parties, the pleadings, and the applicable law, the court finds that Firestone's motions should be granted in part and denied in part.

I.   Background

Plaintiffs, all African-American males, allege that they were discriminated against on account of their race while employed at Firestone's chemical manufacturing facility in Orange, Texas. Specifically, Plaintiffs claim they were denied training, promotions, and overtime opportunities, and were demoted in a racially-discriminatory manner. Moreover, Plaintiffs assert that their abusive working conditions rendered the workplace a "hostile work environment." Plaintiffs filed their Original Complaint on June 29, 2012, and filed their First Amended Complaint on February 4, 2013, asserting violations of the following: Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000h-6; the Civil Rights Act of 1866, 42 U.S.C.

§ 1981; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a); the Lilly Ledbetter

Fair Pay Act of 2009 ("LLFPA"); and Executive Order 11246.[1]

Plaintiffs are represented by the United Steel, Paper, and Forestry, Rubber, Manufacturing,

Energy, Allied Industrial and Service Workers International Union ("USW" or "the Union"), and

the terms of their employment with Firestone are governed by a Collective Bargaining Agreement

(the "CBA") between the Union and Firestone.[2] According to the CBA, employees at Firestone's

---

[1] Plaintiffs' pleadings and briefings to the court are vague, confusing, and at times incomprehensible. Plaintiffs' briefs frequently fail to direct the court to specific pages in the lengthy record. The nonmovant is required to "submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause[s] of action." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The nonmovant must also "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). Although the court has done its best to identify Plaintiffs' evidence in the record, the court is "under no duty 'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Fuentes v. Postmaster Gen. of USPS*, 282 F. App'x 296, 300 (5th Cir. 2008) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)); *see also Malacara*, 353 F.3d at 405 ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."); *accord Saiz v. Sw. Bell Tel. Co.*, No. Civ. A. 4:01-CV-189-Y, 2004 WL 396244, at *1 (N.D. Tex. Jan. 22, 2004) ("It is not this [c]ourt's job to ferret through Plaintiffs' lengthy submissions in the hopes of unearthing evidentiary support for Plaintiffs' position."); *United States v. Dunkel*, 924 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[2] Plaintiffs object to Defendant's use of the CBA on hearsay and authentication grounds. A contract, however, is not hearsay because it has independent legal significance. *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 776 F. Supp. 2d 375, 386 (S.D. Tex. 2011) (citing *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) ("Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance and are not hearsay.")). As to Plaintiffs' authentication argument, the Advisory Committee's comment to Rule 56(c) in the 2010 Amendments states "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." FED. R. CIV. P. 56(C)(2). Here, Firestone argues that the CBA would be admissible at trial under 803(6)—Records of Regularly Conducted Activity. Indeed, it appears that the CBA that governed conditions at the Firestone plant from March 2008 to March 2013 would be admissible as a business record. Further, several Plaintiffs acknowledged at deposition that the CBA governed their terms of employment, thus providing circumstantial evidence that the CBA is what its proponent claims it to be. *See* Docket No. 76, Exhibit 9, Page 16 (Ruffin); Docket No. 76, Exhibit 10, Page 27 (Brooks); Docket No. 76, Exhibit 11, Page 36 (Spencer); Docket No. 76, Exhibit 12, Page

facility are assigned to either A, B, or C-level positions. A-level positions provide the greatest pay, while C-level positions provide the lowest pay. Numerous positions exist within those three levels, and under the CBA, all jobs within the same classification level are paid at the same rate. The CBA also states that all promotions and demotions from one level to another are determined solely by seniority. While training within the A-level is determined by seniority, training within the B and C-levels is not.

All eight Plaintiffs allege slightly different facts.

A.     Paul Brooks

Paul Brooks ("Brooks") was hired by Firestone in June 2000 and began working in a C-level position in the warehouse. Brooks asserts Title VII and § 1981 claims for failure to train, failure to promote, discriminatory demotion, denial of overtime, and hostile work environment. Additionally, Brooks alleges causes of action under the LLFPA and Executive Order 11246.

B.     Ellis Byrd

Ellis Byrd ("Byrd") was hired by Firestone in 1996 and began working in a C-level position in the box-building department. Byrd asserts Title VII and § 1981 claims for failure to train, failure to promote, denial of overtime, and hostile work environment. Additionally, Byrd alleges causes of action under the LLFPA and Executive Order 11246.

---

24 (W. Johnson); Docket No. 76, Exhibit 13, Page 37 (S. Johnson); and Docket No. 76, Exhibit 14, Page 27 (Byrd); *see also In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) ("This Court does not require conclusive proof of authenticity before allowing the admission of disputed evidence . . . . Rule 901 does not limit the type of evidence allowed to authenticate a document. It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be.).

C.    Jonathan Greenaway

Jonathan Greenaway ("Greenaway") was hired by Firestone in June 2000 and began working in a C-level position in the box-building department. Greenaway asserts Title VII and § 1981 claims for failure to train, failure to promote, discriminatory demotion, denial of overtime, and hostile work environment. Additionally, Greenaway alleges causes of action under the LLFPA and Executive Order 11246. Finally, unlike the other Plaintiffs, Greenaway also seeks relief under the ADA.

D.    Samuel Johnson

Samuel Johnson ("S. Johnson") was hired by Firestone in June 1977 and began working in a C-level position in the warehouse. S. Johnson asserts Title VII and § 1981 claims for failure to train, failure to promote, discriminatory demotion, denial of overtime, and hostile work environment. Additionally, S. Johnson alleges causes of action under the LLFPA and Executive Order 11246.

E.    Wayne Johnson

Wayne Johnson ("W. Johnson") worked at Firestone from November 2000 until September 2010. W. Johnson asserts Title VII and § 1981 claims for failure to train, failure to promote, discriminatory demotion, denial of overtime, and hostile work environment. Additionally, W. Johnson alleges causes of action under the LLFPA and Executive Order 11246.

F.    Ricky Ruffin

Ricky Ruffin ("Ruffin") was hired by Firestone in March 2000 and began working in a C-level position in the warehouse. Ruffin asserts Title VII and § 1981 claims for failure to train,

failure to promote, discriminatory demotion, denial of overtime, and hostile work environment. Additionally, Ruffin alleges causes of action under the LLFPA and Executive Order 11246.

    G.    Michael Spencer

Michael Spencer ("Spencer") was hired by Firestone in 1993 and began working in a C-level position in the box-building department. Spencer asserts Title VII and § 1981 claims for failure to train, failure to promote, denial of overtime, and hostile work environment. Additionally, Spencer alleges causes of action under the LLFPA and Executive Order 11246.

    H.    Erick Guillory

Erick Guillory ("Guillory") was hired by Firestone in 1998 and began working in a C-level position in the box-building department. Guillory asserts Title VII and § 1981 claims for failure to train, failure to promote, denial of overtime, and hostile work environment. Additionally, Guillory alleges causes of action under the LLFPA and Executive Order 11246.

Each Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on varying dates between August 2009 and March 2010. On December 19, 2012, following a two-year investigation, the EEOC sent Plaintiffs' counsel a determination letter stating it did "not see how [Plaintiffs] can meet their statutory obligation on the underlying or amended charges."[3] The EEOC letter further noted that the amended charges filed on or about

---

[3] Plaintiffs argue that the EEOC letter is "pure hearsay" and that it "contains no authentication." Pursuant to Rule 56(c)(2), it appears that the letter could be offered in admissible form under Federal Rule of Evidence 803(8)(A)(iii), which provides that a public record is not excluded by the rule against hearsay if it is "[a] record or statement of a public office . . . [that] sets out . . . in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation[.]" FED. R. EVID. 803(8). *See Richardson v. Miss. Dep't of Human Servs.* No. 3:10-CV-198-DPJ-FKB, 2012 WL 568285, at *3 (S.D. Miss. Feb. 21, 2012) (holding that an unauthenticated EEOC determination letter should be considered at the summary judgment stage because "there [was] no argument or indication that the exhibits could not be offered in admissible form" under Rule 56; *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 888 (S.D. Tex. 2010) ("An EEOC determination or factual finding is admissible in a civil action."); *accord*

March 10, 2010, as well as charges concerning events that occurred in 2008 and before, "are time barred." Moreover, the EEOC ran statistical tests to determine whether black employees at Firestone were paid less than white employees. The EEOC concluded that any differences in pay were "statistically insignificant." Nonetheless, the EEOC provided Plaintiffs a right to sue letter, and Plaintiffs filed suit within 90 days after receiving said letter.

II.   Analysis

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "evidence must be adduced supporting each element of the defense and demonstrating the lack of any genuine issue of material fact with regard thereto." *Terrebone Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002); *see Exxon Corp. v.*

---

*Hetherington v. Wal-Mart, Inc.*, 511 F. App'x 909, 911 (11th Cir. 2013) ("Cause determinations by the EEOC are generally admissible under the hearsay exception for public records."); *DeCorte v. Jordan*, 497 F.3d 433, 440 (5th Cir. 2007) ("As a general rule, 'EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination.'") (quoting *McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 400 (5th Cir. 1985)).

*Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.), *cert. denied*, 522 U.S. 915 (1997); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). To warrant judgment in its favor, the movant "'"must establish beyond peradventure *all* of the essential elements of the defense."'" *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (emphasis in original) (quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot*, 780 F.2d at 1194)); *accord Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006). The moving party, however, need not negate the elements of the nonmovants' case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith*, 391 F.3d at 625. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving parties, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith ex rel. Estate of Smith*, 391 F.3d at 624. The evidence of the nonmovants is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in their favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009).

Furthermore, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and

summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovants' burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). "In such a

situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

A.    Title VII

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *accord Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2525 (2013); *Vance v. Ball State Univ.*, ___ U.S. ___, 133 S. Ct. 2434, 2440 (2013); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-93 (2003). "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975)); *see also Nassar*, ___ U.S. at ___, 133 S. Ct. at 2522.

"Title VII discrimination can be established through either direct or circumstantial evidence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002)); *accord Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir.

2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003)); *accord Ogletree v. Glen Rose Indep. Sch. Dist.*, 443 F. App'x 913, 917 (5th Cir. 2011); *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 349 (5th Cir. 2008); *Jones v. Robinson Prop. Group, LP*, 427 F.3d 987, 992 (5th Cir. 2005).

"Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *see Reeves*, 530 U.S. at 142-43; *Fahim*, 551 F.3d at 349; *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007). This method of analysis is utilized for both Title VII and § 1981 claims. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *Mendoza v. Bell Helicopter*, 548 F. App'x 127, 128 (5th Cir. 2013); *Jones*, 427 F.3d at 992; *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).

Where, as here, there is no direct evidence of discrimination, a plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *See Reeves*, 530 U.S. at 142-43; *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362-63 (5th Cir. 2013); *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012); *Alvarado*, 492 F.3d at 611; *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "To establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quotation

omitted)); *accord Turner*, 675 F.3d at 892 ("The burden of establishing a *prima facie* case of disparate treatment is not onerous."); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999).

Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Haire*, 719 F.3d at 363; *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010); *Fahim*, 551 F.3d at 349; *Alvarado*, 492 F.3d at 611; *Nasti*, 492 F.3d at 593. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)*, overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc.* 557 U.S. 167, 169-70 (2009)); *accord Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Alvarado*, 492 F.3d at 611. "The [employer] must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, '*if believed by the trier of fact*,' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer*, 169 F.3d at 966 (quoting *Hicks*, 509 U.S. at 507) (emphasis in original)); *accord Vaughn*, 665 F.3d at 636; *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).

If the employer meets its burden, "'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves*, 530 U.S. at 142-43 (quoting *Hicks*, 509 U.S. at 510); *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 271 (5th Cir. 2011)); *Nasti*, 492 F.3d at 593; *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.), *cert. denied*, 546 U.S. 1061 (2005); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). "Although intermediate evidentiary burdens shift back

and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *accord Hicks*, 509 U.S. at 507; *Nasti*, 492 F.3d at 593; *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753-54 (5th Cir. 2005). In attempting to satisfy this burden, under the modified *McDonnell Douglas* approach, the plaintiff must offer sufficient evidence to create a genuine issue of material fact "'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'" *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)); *accord Vaughn*, 665 F.3d at 636; *Fahim*, 551 F.3d at 349; *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007), *cert. denied*, 552 U.S. 1166 (2008); *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). "In assessing whether a protected characteristic was 'a motivating factor,' a court must consider the evidence presented by the plaintiff as a whole." *Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 365 (5th Cir. 2009) (citing *Machinchick*, 398 F.3d at 355).

Under the pretext alternative approach, the "plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578 (citing *Reeves*, 530 U.S. at 143; *Wallace*, 271 F.3d at 220); *accord Nasti*, 492 F.3d at 593. "An explanation is false or unworthy or credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578 (citing *Sandstad*, 309 F.3d at 899); *accord Vaughn*, 665 F.3d at 637; *Burrell*, 482 F.3d at 412.

13

"[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 530 U.S. at 147 (emphasis in original); *accord Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 861 (5th Cir. 2010); *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 476 (5th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006); *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 574 (5th Cir. 2004); *West*, 330 F.3d at 385. "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination without further evidence of defendant's true motive." *Laxton*, 333 F.3d at 578 (citing *Sandstad*, 309 F.3d at 897); *accord Black*, 646 F.3d at 276; *Machinchick*, 398 F.3d at 351 (citing *Reeves*, 530 U.S. at 147-48). "'[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.'" *Russell*, 235 F.3d at 223 (quoting *Reeves*, 530 U.S. at 147); *accord Black*, 646 F.3d at 276; *Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385. Hence, the plaintiff need not, as a matter of course, introduce additional, independent evidence of discrimination to avoid summary judgment. *See Reeves*, 530 U.S. at 148; *Ratliff v. City of Gainesville*, 256 F.3d 355, 361-62 (5th Cir. 2001); *Blow v. City of San Antonio*, 236 F.3d 293, 298 (5th Cir. 2001); *Russell*, 235 F.3d at 223.

Ultimately, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case'" that properly may be considered by the court when ruling on a motion for summary judgment. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49);

*accord Machinchick*, 398 F.3d at 351 n.14; *Laxton*, 333 F.3d at 579; *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

Because the plaintiff has the ultimate burden of proving intentional discrimination, "[a]n employer is entitled to judgment as a matter of law on this ultimate question 'if the evidence taken as a whole would not allow a jury to infer that the actual reason for the [employer's decision] was discriminatory.'" *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 565 (5th Cir.), *cert. denied*, 534 U.S. 817 (2001) (quoting *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, 531 U.S. 1150 (2001)). "A mere scintilla of evidence of pretext does not create an issue of material fact in all cases." *Crawford*, 234 F.3d at 902 (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 301 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001)). "It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *Crawford*, 234 F.3d at 903 (citing *Travis v. Bd. of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997), *cert. denied*, 522 U.S. 1148 (1998)). "The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination." *Id*.

Plaintiffs' race-based Title VII claims can be divided into five categories: (1) failure to train; (2) failure to promote; (3) discriminatory demotion; (4) denial of overtime; and (5) hostile work environment. Firestone moves for summary judgment on the basis that Plaintiffs' "failure to train" and "failure to promote" claims are time-barred; that nondiscriminatory reasons account for any demotions; and that Plaintiffs failed to plead hostile work environment claims. Firestone

does not directly address Plaintiffs' denial of overtime claims.[4]  Aside from asserting that "Defendant's pleadings fail to give 'fair notice' to the Plaintiffs as to the exact nature of its [limitations] defenses,"[5] Plaintiffs failed to respond in any substantive detail to Firestone's arguments.[6]

### 1.    Failure to Train

Plaintiffs each assert "failure to train" causes of action.  In their motions for summary judgment, Firestone argues that Plaintiffs' claims fail as a matter of law because "failure to train" claims are not actionable.  Specifically, Firestone asserts that in order to establish a *prima facie* case of discrimination based on disparate treatment, a plaintiff must show that he suffered one or more "adverse employment actions."  According to Firestone, established Fifth Circuit precedent holds that "a refusal to train is not an adverse employment action under Title VII."  Plaintiffs fail to respond to Firestone's argument and cite no case law supporting their theory.

To establish a *prima facie* case of disparate treatment, a plaintiff must show that:

(1)     he is a member of a protected class;

(2)     he is qualified for the position;

---

[4] Firestone's lone reference to Plaintiffs' "denial of overtime" claims appears in its Reply to Plaintiffs' Response in Opposition to Summary Judgment (#75), wherein Firestone argues that the LLFPA does not apply to alleged denials of overtime.  The court agrees.  Nonetheless, Plaintiffs appear to plead its denial of overtime claims independently of the LLFPA.  *See* Docket No. 13, Paragraph 37. Additionally, while Firestone broadly states that Plaintiffs' Title VII and § 1981 claims are time-barred, the court does not have sufficient information regarding the denial of overtime claims to make such a determination at this juncture.

[5] Firestone's Answer (#6) explicitly states that "Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations . . . ."  Accordingly, Plaintiffs were given fair notice as to the nature of Firestone's limitations defense.

[6] In failing to respond to the arguments presented by Firestone in its Motions for Summary Judgment, Plaintiffs violated Local Rule CV-7(a)(1), which provides that "[r]esponses to case dispositive motions must include a response to the movant's statement of issues."

(3)     he suffered an adverse employment action; and

(4)     others outside the class who were similarly situated were treated more favorably than he.

*See Nasti*, 492 F.3d at 593; *Keelan*, 407 F.3d at 339; *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (citing *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001)); *Laxton*, 333 F.3d at 759 n.1; *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

He must demonstrate that employees outside his protected class received more favorable treatment under nearly identical circumstances. *See Turner*, 675 F.3d at 893-96; *Bryant*, 413 F.3d at 478; *Keelan*, 407 F.3d at 345; *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004), *cert. denied*, 546 U.S. 976 (2005) (emphasizing that assessment of similarity of employees must be viewed from employer's perspective); *Wallace*, 271 F.3d at 221. "'The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" *Turner*, 675 F.3d at 893 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir.), *cert. denied*, 133 S. Ct. 136 (2012). Also, "the conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee*, 574 F.3d at 260. But "[e]ach employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable." *Id.* at 260-61.

The Fifth Circuit continues to hold that with respect to discrimination claims, adverse employment actions include only ultimate employment decisions. *Thompson v. City of Waco,* ___ F.3d ___, 2014 WL 4364153, at *2 (5th Cir. Sept. 3, 2014); *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 456 n.2 (5th Cir. 2011); *see also McCoy*, 492 F.3d at 559 (reasoning that the Supreme Court's holding in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) applies solely to retaliation claims). Title VII was only designed to address "*ultimate* employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'" *Thompson*, 2014 WL 4364153, at *2 (quoting *McCoy*, 492 F.3d at 560); *see also Preston v. Tex. Dep't of Family & Prot. Servs.*, 222 F. App'x 353, 358 (5th Cir. 2007) (quoting *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995)), *overruled on other grounds by White*, 548 U.S. at 67. "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.), *cert. denied*, 540 U.S. 817 (2003)); *see also Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001) ("[A] shift change, without more, is not an adverse employment action."); *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (holding that changes in work hours are not adverse employment actions); *Johnson v. Tune*, No. 4:10-cv-124, 2011 WL 3299927, at *4 (E.D. Tex. Apr. 29, 2011) (holding that the "decision to deny Plaintiff weekends off is not enough to allege an adverse employment action sufficient to state an actionable claim").

Actionable adverse employment actions are generally limited to tangible employment actions that constitute a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see Robison v. Tex. Dep't of Crim. Justice*, 94 F. App'x 225, 228 (5th Cir. 2004) (affirming district court's grant of summary judgment as to plaintiff's Title VII claim on the basis that plaintiff suffered no adverse employment action where he failed to submit evidence that he was "fired, reassigned, denied promotion, suffered a change in benefits, or disciplined"); *Banks*, 320 F.3d at 575; *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001); *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999); *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999); *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 540 (5th Cir. 1998); *accord Thompson*, 2014 WL 4364153, at *2. An ultimate employment decision, in itself or through its direct consequences, must effect a material change in the terms or conditions of employment. *See Burger*, 168 F.3d at 879; *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). "An employer's action does not rise to the level of an 'adverse employment action' when it fails to have more than 'mere tangential effect on a possible future ultimate employment decision.'" *Mota*, 261 F.3d at 519 (quoting *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000), *overruled on other grounds by White*, 548 U.S. at 52; *accord Clayton v. Rumsfeld*, 106 F. App'x 268, 170 (5th Cir. 2004); *see Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997), *cert. denied*, 525 U.S. 1067 (1999); *Farquhar v. Tex. Alcoholic Beverage Comm'n*, No. A-12-CA-1042-SS, 2014 WL 2700476, at *3 (W.D. Tex. June 13, 2014) (quoting *McCoy*, 491 F.3d at 559).

"[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same." *Watts*, 170 F.3d at 512; *accord Mora v. Ashcroft*, 142 F. App'x 206, 207 (5th Cir. 2005); *Mota*, 261 F.3d at 522. "'Although actions short of termination may constitute an adverse employment action within the meaning of the statute, not everything that makes an

19

employee unhappy is an actionable adverse action.'" *Greaser v. Mo. Dep't of Corr.*, 145 F.3d 979, 984 (8th Cir.), *cert. denied*, 525 U.S. 1056 (1998) (quoting *Manning v. Metro. Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir. 1997)); *accord Garrison v. Gambro, Inc.*, 428 F.3d 933, 939 (10th Cir. 2005); *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Interlocutory or mediate decisions, even those that can lead to an ultimate employment decision, are not adverse employment actions for purposes of the employment discrimination statutes. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.), *cert. denied*, 522 U.S. 932 (1997).

Notably, the Fifth Circuit has consistently declined to find that a denial of training can constitute an adverse employment action. *Hollimon v. Potter*, 365 F. App'x 546, 549 (5th Cir. 2010) ("[A] refusal to train is not an adverse employment action under Title VII.") (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999)); *Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 361 (5th Cir. 2005), *cert. denied*, 548 U.S. 924 (2006) (finding no adverse employment action where plaintiff was denied training on a computer system); *Shackelford*, 190 F.3d at 406 (finding no adverse employment action where plaintiff was denied access to training on specialized filing software); *Dollis*, 77 F.3d at 779; *Jones v. BP Amoco Chem. Co.*, No. H-10-1399, 2012 WL 1424986, at *5 (S.D. Tex. Apr. 23, 2012) (holding that plaintiff's "failure to train" claim lacked merit because it was not an adverse employment action); *Wojciechowki v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 857 (S.D. Tex. 2011) (holding that plaintiff's failure to train claim failed under Fifth Circuit precedent); *Veal v. Schlumberger*, No. Civ. A. H-04-3550, 2006 WL 237006, at *9 (S.D. Tex. Jan. 31, 2006) (dismissing plaintiff's denial of training claims because plaintiff did not show an adverse employment action).

In light of clear Fifth Circuit precedent, as well as Plaintiffs' failure to support their position with any law, the court finds that Plaintiffs' Title VII failure to train claims do not implicate any adverse employment actions. Consequently, these claims do not survive summary judgment.

Further, even assuming *arguendo* that Plaintiffs' "failure to train" claims are actionable, the vast majority of them are time-barred.[7] In Texas, because there is a state agency with the authority to grant or seek relief for discriminatory employment practices, a plaintiff must file his charge of discrimination with the EEOC or the designated state agency within "three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Lewis v. City of Chicago*, 560 U.S. 205, 210-11 (2010); *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 623-24 (2007), *superseded in part by statute on other grounds*, LLFPA, Pub. L. No. 111-2, 42 U.S.C. § 2000e-5(e)(3); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Kirkland v. Big Lots Store, Inc.*, No. 13-30261, 2013 WL 6097551, at *2 (5th Cir. Nov. 21, 2013); *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). Pursuant to a work-sharing agreement between the EEOC and the Texas Commission on Human Rights ("TCHR")[8], whenever the EEOC receives a charge of discrimination, "the TCHR, for all legal and practical purposes, [also] receive[s] the [charge]." *Griffin v. City of Dallas*, 26 F.3d 610, 612-13 (5th Cir. 1994).

---

[7] Though Plaintiffs do not directly address Firestone's statute of limitations arguments, they appear to assert broadly that the LLFPA saves their time-barred claims. Plaintiffs' argument is without merit. The LLFPA does not apply to discrete acts (failure to train, failure to promote, discriminatory demotion, and denial of overtime) such as the incidents at issue here. *See Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 350 (5th Cir. 2010); *Anthony v. Galveston Cnty.*, No. 3:12-CV-00269, 2014 WL 109352, at *5 (S.D. Tex. Jan. 10, 2014); *Blasingame v. Eli Lilly & Co.*, No. H-11-4522, 2013 WL 5707324, at *5 (S.D. Tex. Oct. 18, 2013).

[8] Texas later abolished the TCHR "and transferred its powers and duties to the Civil Rights Division of the Texas Workforce Commission." *Johnson v. Select Energy Servs., LLC*, No. H-11-3486, 2013 WL 5425115, at *1 n.1 (S.D. Tex. Sept. 24, 2013).

Generally, the limitations period begins on the date the discriminatory act occurred, and a plaintiff cannot sustain his claims based on incidents that occurred more than 300 days before the filing of a charge of discrimination. *Ledbetter*, 550 U.S. at 623-24; *Morgan*, 536 U.S. at 110; *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1285 (2010). When considering whether discriminatory acts that fall outside the limitations period are actionable under Title VII, the United States Supreme Court has distinguished claims alleging discrete discriminatory acts from those alleging a hostile work environment. *Ledbetter*, 550 U.S. at 638; *Morgan*, 536 U.S. at 110; *see also Pegram*, 361 F.3d at 279.

In *Morgan*, the [United States] Supreme Court noted that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" 536 U.S. at 110; *see also Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 323 (5th Cir. 2008). "A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Morgan*, 536 U.S. at 110; *accord Ledbetter*, 550 U.S. at 647; *Pegram*, 361 F.3d at 279. Certain discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or refusal to hire, are "easy to identify." *Morgan*, 536 U.S. at 114; *accord Ledbetter*, 550 U.S. at 647; *Pegram*, 361 F.3d at 280 n.5. Although not an exhaustive list, each discrete act "constitutes a separate actionable unlawful employment practice." *Morgan*, 536 U.S. at 114; *Pegram*, 361 F.3d at 280 n.5.

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113; *accord Pegram*, 361 F.3d at 279; *Mack v. John L. Wortham & Son, L.P.*, No. H-10-4881, 2012 WL 5456117, at *5 (S.D. Tex. Nov. 7, 2012). Hence, "claims based on discrete acts are timely only where such acts

occurred within the limitations period." *Pegram*, 361 F.3d at 279 (citing *Morgan*, 536 U.S. at 113); *Mack*, 2012 WL 5456117, at *5. Moreover, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113; *accord Pegram*, 361 F.3d at 279; *Liddell v. Northrop Grumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 451 (S.D. Miss. 2011). Any act occurring outside the applicable filing period "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558 (1977); *accord Morgan*, 536 U.S. at 112; *Ramsey v. Henderson*, 286 F.3d 264, 270 (5th Cir. 2002); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 n.12 (5th Cir. 1995). "[C]urrent effects alone cannot breathe life into prior, uncharged discrimination." *Ledbetter*, 550 U.S. at 619; *Garcia v. Brockway*, 526 F.3d 456, 463 (9th Cir.), *cert. denied*, 555 U.S. 1069 (2008).

Here, Plaintiffs' "failure to train" claims are considered discrete acts. *Pegram*, 361 F.3d at 280 ("discrete acts such as failure to train . . . may not be pursued outside the relevant limitations period."). Accordingly, any instance of a "failure to train" that occurred more than 300 days before Plaintiffs' filed their charges of discrimination is time-barred.

a. Brooks

Brooks fails to direct the court to any evidence specifying the date(s) on which his alleged "failure to train" occurred. In response to Firestone's first set of interrogatories which asked Brooks to identify "every instance in which [he] sought and [was] denied training by Defendant," Brooks listed only one year—2003—and did not specify an exact date or month. *See* Docket No. 59, Exhibit 3, Page 3. Nonetheless, Brooks argues that Firestone's limitations argument is irrelevant due to the fact that the EEOC issued each Plaintiff a Letter of "Intent to Sue."

23

Brooks's argument is not well taken because a right-to-sue letter does not immunize a plaintiff from statutorily-mandated timeliness requirements. Here, 42 U.S.C. § 2000e-5(e)(1) is clear: a plaintiff must file his charge of discrimination with the EEOC or the designated state agency within "three hundred days after the alleged unlawful employment practice occurred." *Id.* Indeed, the letter the EEOC sent to Plaintiffs' counsel on February 10, 2012, stated that there were "concerns about the timeliness of several of the issues raised in almost all of the charges and that the Commission's investigative authority is limited to issues filed within 300 days of the disputed action." *See* Docket No. 61, Exhibit 4. Accordingly, the court rejects Brooks's contention that the EEOC's right-to-sue letter shields him from complying with the applicable statute of limitations.

Brooks's original charge of discrimination was filed on December 3, 2009, and his amended charge was filed on March 9, 2010. As a result, any instances of an alleged "failure to train" that occurred before February 6, 2009—300 days before the original charge was filed—are time-barred. Here, Brooks's alleged instance of a "failure to train" in 2003 occurred several years before his February 6, 2009, deadline. Consequently, the claim is time-barred.

b.     Byrd

Byrd fails to direct the court to evidence specifying the date(s) on which his alleged "failure to train" occurred. Firestone notes, however, that at deposition, Byrd did not specify any "denial of training" that occurred after the middle of 2008. *See* Docket No. 60, Exhibit 2, Page 44. Byrd's charge of discrimination was filed on December 9, 2010. As a result, his allegations of a "failure to train" occurred more than 300 days before the charge was filed. Hence, these claims are time-barred.

c.     Greenaway

Greenaway fails to direct the court to evidence specifying the date(s) he was denied training. Firestone notes, however, that at deposition, Greenaway maintained that he was denied training on three occasions. *See* Docket No. 61, Exhibit 2, Pages 69-80.

The first incident allegedly occurred in 2008 when the BCP unit was still operational and Greenaway requested to train for an A-operator position in the BCP unit. *Id.* at 78-80. Greenaway's charge of discrimination was filed on March 9, 2010. This incident occurred more than 300 days before the charge was filed and is thus time-barred.

The second incident allegedly occurred in 2011 when Greenaway was denied training for a vacation relief job. *Id.* at 70-72. The third incident allegedly occurred in 2012 when Greenaway was denied training for a position in the Crumb Line control room.[9] *Id.* at 74-78. These claims, while not time-barred, fail because a "failure to train" is not an adverse employment action.

d.     S. Johnson

S. Johnson fails to direct the court to evidence specifying the date(s) on which he was denied training. Firestone notes, however, that at deposition, S. Johnson vaguely referenced three instances in which he was denied training. The first incident allegedly occurred between 1997 and 2003. *See* Docket No. 62, Exhibit 2, Page 8. The second incident allegedly occurred sometime in 2009 when S. Johnson was purportedly denied training for a vacation relief recovery job. *Id.* at 32. The third incident allegedly occurred in 2012 when he was denied training on the re-instituted 3rd Crumb line. *Id.* at 81.

---

[9] Evidence in the record suggests that Greenaway did in fact receive training for this position and was working in the Crumb Line control room at the time of his deposition. *See* Docket No. 61, Exhibit 2, Page 78.

S. Johnson's charge of discrimination was originally filed on December 3, 2009, and was later amended on March 9, 2010. The first incident—occurring between 1997 and 2003—occurred more than 300 days before the original charge was filed and is thus time-barred. As previously discussed, S. Johnson's 2009 and 2012 "failure to train" claims, while not time-barred, are not viable because a "failure to train" does not constitute an adverse employment action.

e.     W. Johnson

W. Johnson fails to direct the court to evidence specifying the date(s) on which his alleged "failure to train" occurred. Firestone points out, however, that at deposition, W. Johnson identified three instances in which he was reportedly denied training. The first incident occurred in 2005 when W. Johnson was purportedly denied training for a B-level Drum Dryer position. *See* Docket No. 63, Exhibit 2, Page 26. The second incident occurred sometime in 2004 or 2005 when W. Johnson was reportedly denied training for a B-level position in utilities. *Id.* at 30. The third incident occurred "pre-2007" when W. Johnson claims he was refused training for a B-level recovery unit job. *Id.* at 39.

W. Johnson's original charge of discrimination was filed on December 3, 2009, and was amended on March 9, 2010. As a result, each instance mentioned above occurred more than 300 days before the original charge was filed. Consequently, these claims are untimely and therefore time-barred.

f.     Ruffin

Ruffin fails to direct the court to evidence specifying the date(s) on which he was allegedly denied training. At deposition, however, Ruffin testified that he was denied training for "preferred" B-level positions in both 2003 and 2006. *See* Docket No. 76, Exhibit 9, Pages 12,

22. Ruffin's charge of discrimination was filed on March 9, 2010. As a result, these instances occurred more than 300 days before the charge was filed and are thus time-barred.

g.    Spencer

Spencer fails to direct the court to evidence specifying the date(s) on which he was denied training. Firestone notes, however, that at deposition, Spencer repeatedly stated that he did not remember when he was denied training. When Firestone asked Spencer whether he had requested training in the week preceding the deposition, Spencer declared that he "did not remember." *See* Docket No. 76, Exhibit 11, Page 29. In fact, when asked whether he remembered making "any training requests," Spencer replied, "No." *Id*. at 30. Nonetheless, Spencer finally stated he was denied training in the 200/300 area sometime in the 1990s. *Id*. at 27. He further testified that he was denied training when he worked as a helper and a B-level operator, which occurred "so long ago." *Id*. at 100-01. In fact, Spencer last worked as a B-level operator in 2005. *Id*. at 102.

Spencer's EEOC charge was filed on March 9, 2010. As a result, the aforementioned incidents occurred more than 300 days before the charge was filed and are thus time-barred.

h.    Guillory

Guillory fails to direct the court to evidence specifying the date(s) he was denied training. Firestone notes, however, that at deposition, Guillory stated that he was denied training in six different positions "about 50 times apiece." *See* Docket No. 66, Exhibit 2, Page 36. Despite his claim that he was denied training on 300 separate occasions, Guillory specifies only one instance that allegedly occurred in 2008. *Id*. at 21. Guillory contends that he was denied training for a Drum Dryer Recovery position from April 21, 2008, until the Drum Dryers were permanently shut down as a result of Hurricane Ike in September 2008. *Id*. at 21.

Guillory's charge of discrimination was filed on March 9, 2010.  As a result, his 2008 claim occurred more than 300 days before the charge was filed and is thus time-barred.

    2.    Failure to Promote

Plaintiffs next allege that they were denied promotions on account of their race in violation of Title VII.  Firestone first argues that nearly all of Plaintiffs' promotion claims are barred by limitations.  Second, Firestone asserts that the one claim not barred by limitations—Greenaway's 2012 claim—nonetheless fails because Greenaway did not exhaust his administrative remedies as required under Title VII.  Plaintiffs do not respond to Firestone's arguments.

Plaintiffs' "failure to promote" claims are also discrete acts.  *Morgan*, 536 U.S. at 114 ("Discrete acts such as . . . failure to promote . . . are easy to identify."); *accord Ledbetter*, 550 U.S. at 647; *Pegram*, 361 F.3d at 280 n.5.  As a result, in order to maintain a Title VII claim, Plaintiffs must have filed their charges of discrimination with the EEOC within 300 days of when any alleged "failure to promote" occurred.  42 U.S.C. § 2000e-5(e)(1); *Lewis*, 560 U.S. at 210-11.

    a.    Brooks

Brooks fails to direct the court to evidence specifying the date(s) on which he was denied a promotion.  Firestone notes, however, that at deposition, Brooks testified that he was denied a promotion "sometime between 2000 and 2003."  *See* Docket No. 59, Exhibit 2, Page 12.  Further, in his EEOC charge, Brooks claimed that he was denied a promotion "in the latter part of 2008."

Brooks's EEOC charge was filed on March 9, 2010.  As a result, the aforementioned incidents occurred more than 300 days before the charge was filed and are thus time-barred.

b.    Byrd

Byrd fails to direct the court to evidence specifying the date(s) on which he was denied a promotion.  Firestone acknowledges, however, that Byrd stated at deposition that he was denied a promotion at a time when a different union, the Oil, Chemical and Atomic Workers International Union ("OCAW"), represented workers at the Orange Plant.  *See* Docket No. 60, Exhibit 2, Page 60.    Record evidence demonstrates that OCAW has not represented the bargaining unit at Firestone's Orange plant since January 4, 1999.  *See* Docket No. 60, Exhibit 3.  Further, in his EEOC charge, Byrd claims that he was denied a promotion "in the latter part of 2008."

Byrd's charge of discrimination was filed on March 9, 2010.  Therefore, both incidents mentioned above occurred more than 300 days before the charge was filed.  Hence, the claims are time-barred.

c.    Greenaway

Greenaway fails to direct the court to evidence specifying the date(s) on which he was denied a promotion.  Firestone asserts, however, that at deposition, Greenaway stated that he was denied promotions on account of his race on seven occasions.   Six out of the seven alleged promotion denials occurred in 2002, 2007, and 2008.  *See* Docket No. 61, Exhibit 2, Pages 10, 11, 12, 16, 20, 23, and 29.  Those claims occurred more than 300 days before the charge was filed and are thus time-barred.

Firestone argues that the seventh incident, which allegedly occurred in 2012, fails because Greenaway did not exhaust his administrative remedies.  "Title VII requires employees to exhaust their administrative remedies before seeking judicial relief."  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)).  It is well settled that courts may not entertain claims brought under Title VII as to which an

aggrieved party has not first exhausted his administrative remedies by filing a charge of discrimination with the EEOC. *See Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012); *McClain*, 519 F.3d at 273; *Taylor v. Books A Million*, 296 F.3d 376, 378-79 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200 (2003); *see also* 42 U.S.C. § 2000e-5(e)(1). While not uniformly viewed as a jurisdictional prerequisite, the filing of an EEOC charge "'is a precondition to filing in district court.'" *Taylor*, 296 F.3d at 379 (quoting *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (citing *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863 (5th Cir. 1983))).

The primary purpose of the EEOC charge is to provide notice to the respondent of the discrimination alleged and to activate the voluntary compliance and conciliation functions of the EEOC. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878-79 (5th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004); *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577-78 (5th Cir. 1993); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). The charge triggers an investigation by the EEOC so, through a conciliation process, voluntary compliance may be obtained and discriminatory practices and policies eliminated. *See Barnes v. Levitt*, 118 F.3d 404, 409 (5th Cir. 1997), *cert. denied*, 523 U.S. 1136 (1998); *EEOC v. Hearst Corp.*, 103 F.3d 462, 464 (5th Cir. 1997). Requiring the plaintiff first to state his allegations of employment discrimination in an EEOC charge serves "Congress' intention to promote conciliation rather than litigation in the Title VII context." *Burlington Indus.*, 524 U.S. at 764.

Civil complaints filed under Title VII may only encompass discrimination "'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" *McClain*, 519 F.3d at 273 (quoting *Sanchez*, 431 F.2d at 466); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir. 1994); *see Dollis* 77 F.3d at 781. Accordingly, the scope of the complaint is limited to "'the

discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge.'" *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 712 (quoting *King v. Seaboard Coast Line R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976)); *see Pacheco*, 448 F.3d at 789-90; *Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000). As the Fifth Circuit has stated, although "the actual scope of an EEOC investigation does not determine whether a claim is exhausted, we are also mindful that investigation of a particular claim creates a strong inference that such a claim was presented." *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 (5th Cir. 1994). Thus, the failure to assert a claim of discrimination in an EEOC charge and/or its lack of development in the course of a reasonable investigation of that charge precludes the claim from later being brought in a civil suit. *See Thomas*, 220 F.3d at 395; *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 711-12; *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990); *Sanchez*, 431 F.2d at 465-66. Several district courts have applied these principles to disallow a variety of claims not raised in the EEOC charge. *See*, *e.g.*, *Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 490 (5th Cir. 2010) (affirming district court's ruling that certain claims were unexhausted where plaintiffs failed to either check the appropriate box or describe the discriminatory conduct in the charge); *Butler v. Shinseki*, No. 10-0857, 2011 WL 3419619, at *6 (E.D. La. Aug. 4, 2011) (dismissing racial discrimination claim that was not alleged in the EEOC charge); *Harvill v. Westward Commc'ns, LLC*, 311 F. Supp. 2d 573, 585 (E.D. Tex. 2004) (refusing to allow a constructive discharge claim that was not asserted in the EEOC charge); *Stanley v. Univ. of Tex. Med. Branch*, 425 F. Supp. 2d 816, 822-23 (S.D. Tex. 2003) (dismissing hostile work environment claim because Plaintiff failed to articulate any facts in his EEOC charge that would have put the EEOC on notice).

Here, Greenaway's EEOC charge makes no mention of any 2012 incident involving a failure to promote due to a disability. In fact, Greenaway failed to mention or even allude to any facts in his EEOC charge that would have put the EEOC on notice about the possibility of a "failure to promote" claim resulting from an alleged disability. Consequently, Greenaway's 2012 "failure to promote" claim cannot be deemed to fall within the scope of the investigation that reasonably could have been expected to grow out of his EEOC charge. As a result, Greenaway failed to exhaust his administrative remedies before the EEOC and is now foreclosed from pursuing his 2012 failure to promote claim premised on an alleged disability in this forum.

d.    <u>S. Johnson</u>

S. Johnson fails to direct the court to evidence specifying the date(s) on which he was denied a promotion. Firestone notes, however, that at deposition, S. Johnson referenced an incident involving a "failure to promote" that allegedly occurred sometime before 2003. *See* Docket No. 62, Exhibit 2, Page 31. Additionally, in his EEOC charge, S. Johnson claims that he was "passed over" for a promotion "in the latter part of 2008."

S. Johnson's original EEOC charge was filed on December 3, 2009. Therefore, S. Johnson's promotion denials, which occurred more than 300 days before the charge was filed, are time-barred.

e.    <u>W. Johnson</u>

W. Johnson fails to direct the court to evidence specifying the date(s) on which he was allegedly denied a promotion. Firestone notes, however, that at deposition, W. Johnson claimed he was denied a "production foreman" promotion in 2004 or 2005. *See* Docket No. 63, Exhibit 2, Page 16. In his amended EEOC charge, W. Johnson states that he was "passed over" for a promotion "in the latter part of 2008."

W. Johnson's EEOC charge was filed on December 3, 2009. As a result, his claims occurred more than 300 days before the charge was filed and are thus time-barred.

f.  Ruffin

Ruffin fails to direct the court to evidence specifying the date(s) on which he was denied a promotion. In his original EEOC charge, Ruffin claims that on August 6, 2009, he was "bypassed" for a B-operator promotion when two white employees with less seniority were promoted ahead of him. Ruffin also asserts that he was "passed over" for a promotion "in the latter part of 2008."

Ruffin's 2009 "failure to promote" claim is better characterized as a discriminatory demotion. At deposition, Ruffin stated that when the 3rd Crumb Unit was shut down in "August or October 2009," he and several other workers were demoted from B-operator to C-operator positions while a less-senior white employee was permitted to continue working as a B-operator in contravention of the seniority system outlined in the CBA. *See* Docket No. 76, Exhibit 9, Pages 17-18. In essence, Ruffin argues that he should have retained the B-operator position while James Cooper ("Cooper"), who is white, should have been demoted to the C-operator position. *Id*. Because this incident did not involve a "promotion" *per se*, it will be analyzed in the subsequent section regarding discriminatory demotions.

Ruffin's second "failure to promote" allegedly occurred in 2008. His amended EEOC charge was filed on March 9, 2010. Therefore, because the incident occurred more than 300 days before the charge was filed, it is time-barred.

g.     Spencer

Spencer fails to direct the court to evidence specifying the date(s) on which he was denied a promotion.  In his EEOC charge, Spencer claims that he was "passed over" for a promotion "in the latter part of 2008."

Spencer's charge of discrimination was filed on March 9, 2010, more than 300 days after the aforementioned incident.  Accordingly, the claim is time-barred.

h.     Guillory

Guillory fails to direct the court to evidence specifying the date(s) on which he was denied a promotion.  In his EEOC charge, which was filed on March 8, 2010, Guillory claims that he was "passed over" for a promotion "in the latter part of 2008."  Because the incident occurred more than 300 days before the charge was filed, it is time-barred.

3.     Discriminatory Demotion

Brooks, Greenaway, S. Johnson, W. Johnson, and Ruffin allege that they were demoted because of their race in violation of Title VII.  Firestone argues that Plaintiffs were demoted pursuant to the non-discriminatory "seniority" provision outlined in the CBA.  With regard to S. Johnson's 2008 demotion claim, Firestone alternatively argues that the claim is barred by limitations.  Plaintiffs do not respond to Firestone's arguments.

To establish a *prima facie* case of discriminatory demotion, a plaintiff must show that:

(1)     he is a member of a protected class;

(2)     he was qualified for the position he occupied;

(3)     he was demoted; and

(4)     he was replaced by someone outside the protected class or persons similarly situated who were not in the protected class retained their positions.

34

*Caldwell v. Univ. of Houston Sys.*, 520 F. App'x 289, 293 (5th Cir. 2013) (citing *Crawford*, 234 F.3d at 902); *Howard v. United Parcel Serv.*, 447 F. App'x 626, 629 (5th Cir. 2011); *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996).

a.    <u>Brooks, Greenaway, W. Johnson</u>

Brooks, Greenaway, and W. Johnson (collectively, "Discriminatory Demotion Plaintiffs") fail to direct the court to evidence specifying the date(s) on which they were demoted. In their EEOC charges, Discriminatory Demotion Plaintiffs each claim that they were "demoted from a B-operator job to a C-operator job with a substantial reduction in pay" in June 2009. Firestone responds that when the 3rd Crumb Line was shut down in June 2009, many employees—both black and white—were adversely affected. According to Firestone, employees were demoted pursuant to the non-discriminatory seniority provisions of the CBA. Firestone argues that its application of the CBA provisions to reassign employees is a "lawful, legitimate, nondiscriminatory reason for those decisions." Plaintiffs did not respond to Firestone's arguments.

In the case at bar, Firestone does not contest that Discriminatory Demotion Plaintiffs have established a *prima facie* case of discrimination. Therefore, a rebuttable presumption of intentional discrimination attaches and the burden of production shifts to Firestone to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Wallace*, 271 F.3d at 219-20. To meet its burden of production, Firestone cites the "Layoff" provision of the CBA, which states:

Section 4. Layoff

      A.     In the event of a plant layoff lasting more than four (4) weeks (28 days), employees will be laid off in the inverse order of their plant seniority.

      B.     An employee who is removed from his line of progression due to a plant layoff lasting more than four (4) weeks (28 days) shall be entitled to exercise his seniority in the bottom classification in any other line of progression, provided;

            1.     He/She can qualify for and is able to perform the work of such classification.

            2.     For the purpose of determining the bottom classification in the Maintenance line of progression, any employee who has completed less than twelve (12) months as a Maintenance Trainee shall be considered in the bottom classification of that line of progression.

      C.     In the event of a shutdown due to business conditions lasting less than four (4) weeks (less than 28 days), the affected employees would be reassigned to contract positions in the Warehouse and/or utilized at the Company's discretion with no loss of pay. In the event of a unit shutdown, lasting more than four (4) weeks (28 days), the current plant seniority lay off provisions would apply as detailed in Article X, Section 4, Paragraphs A and B above.[10]

*See Padilla v. Carrier Air Conditioning*, 67 F. Supp. 2d 650, 659 (E.D. Tex. 1999) (finding that

defendant's actions were made in accordance with the collective bargaining agreement and

therefore were nondiscriminatory in nature); *Dandrige v. Chromcraft Corp.*, 914 F. Supp. 1396,

---

[10] Even without consulting the CBA, which Plaintiffs argue is not properly authenticated, Plaintiffs all independently assert that the CBA's seniority provision governed demotion (and promotion) decisions. In fact, Plaintiffs' claims assume the existence of a seniority provision because Plaintiffs argue they were denied promotions, demotions, and training in contravention of the seniority system outlined in the CBA. *See* Docket No. 61, Exhibit 2, Page. 69 (Greenaway); Docket No. 66, Exhibit 2, Page. 24 (Guillory); Docket No. 76, Exhibit 9, Page 19 (Ruffin); Docket No. 76, Exhibit 10, Page 51 (Brooks); Docket No. 76, Exhibit 11, Page 43 (Spencer); Docket No. 76, Exhibit 12, Page 22 (W. Johnson); Docket No. 76, Exhibit 13, Page 41 (S. Johnson); Docket No. 76, Exhibit 14, Page 27 (Byrd) (agreeing that "[e]very bid" is based solely on seniority per the CBA).

1402 (N.D. Miss. 1996) (holding that plaintiff's demotion was made in accordance with "department seniority" policy and was therefore nondiscriminatory).

The burden, therefore, shifts to the Discriminatory Demotion Plaintiffs to present evidence that Firestone's proffered legitimate, nondiscriminatory reason for demoting them was pretextual. Though Discriminatory Demotion Plaintiffs never use the word "pretext" in their responsive brief, the court assumes that the three charts attached to their response constitute their effort to rebut Firestone's nondiscriminatory justification.[11]

The charts plot the Discriminatory Demotion Plaintiffs' training and job progressions from 2005-2012. *See* Docket No. 76, Exhibits 2-4. The charts, which are color-coded, highlight the supposedly "labor-intensive" jobs in blue and the "more-desired" jobs in yellow. *Id.* Plaintiffs argue that Exhibit B and Exhibit C show how non-African-American employees with "one to seven years less seniority" than the Discriminatory Demotion Plaintiffs were "not only promoted, trained[,] and qualified for the more desired jobs but, they were allowed to bounce to their old

---

[11] Firestone cites to district court holdings in Florida and California for the proposition that charts authored by a party's counsel are inadmissible hearsay. *See Wigfall v. Saint Leo Univ., Inc.*, No. 8:10-CV-02232-T-24-TGW, 2012 WL 717868, at *4 (M.D. Fla. Mar. 6, 2012); *TV Interactive Data Corp. v. Sony Corp.*, No. C 10-0474 PJH, 2012 WL 6020113, at *22 (N.D. Cal. Dec. 3, 2012). Thus, according to Firestone, Plaintiffs' charts should be stricken from the record. Plaintiffs respond that "[t]hese charts are admissible as summary under Rule Federal Rules of Evidence." Presumably, Plaintiffs are referring to Rule 1006 which states "[t]he proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." FED. R. EVID. 1006. Plaintiffs have also attached what appear to be the admissible business records upon which they relied in making the charts. Accordingly, because the charts merely summarize the underlying documents (that appear to fall within the hearsay exception for business records), the court will consider the charts for the limited purpose of providing a summary. *See Martin v. Nabors Offshore Corp.*, No. 00-3284, 2002 WL 34360292, at *3 (E.D. La. Apr. 2, 2002) ("Rule 1006 recognizes that it often takes a legion of documents and a great deal of court time to establish a single point."); *see also United States v. Davis*, 261 F.3d 1, 42 n.37 (1st Cir. 2001) ("Summary charts offered pursuant to Fed. R. Evid. 1006, governing charts summarizing voluminous writings, must also be grounded in admissible evidence.").

units to collect more overtime based on information collected from the Production Week Schedules produced by Defendants."

The aforementioned charts, however, are non-responsive to the discriminatory demotion claims. At best, the charts document the training Discriminatory Demotion Plaintiffs received, or failed to receive, from 2005-2012. They are completely devoid, however, of any information relating to demotions. The charts do not show any demotion dates, list any non-protected class employees who were permitted to maintain their jobs while protected class employees were demoted, nor provide examples of non-protected employees who retained their positions in violation of the CBA's seniority scheme.

In short, the charts do not provide any evidence of pretext. Moreover, the court is unaware of any record evidence where a Discriminatory Demotion Plaintiff was demoted and replaced by someone outside the protected class or a similarly situated non-black employee retained his position in contravention of the CBA's seniority policy. Having failed to present any evidence of pretext, the Discriminatory Demotion Plaintiffs "fall[] short of [their] burden of presenting evidence rebutting each of the legitimate nondiscriminatory reasons produced by the [Firestone]." *Wallace*, 271 F.3d at 220. Accordingly, summary judgment is appropriate as to the Discriminatory Demotion Plaintiffs' claims of discriminatory demotion.

b.    Ruffin

Ruffin fails to direct the court to evidence specifying the date(s) on which he was demoted. In his EEOC charge, Ruffin claimed that he was "demoted to 'C' Operator" on June 25, 2009. Again, Firestone asserts that demotions were made according to the seniority provisions of the CBA.

Firestone does not contest that Ruffin has established a *prima facie* case of discrimination. Therefore, a rebuttal presumption of intentional discrimination attaches, and the burden of production shifts to Firestone to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Wallace*, 271 F.3d at 219-20.

Accordingly, Firestone asserts that its application of the CBA's seniority provisions to demote employees constitutes a "lawful, legitimate, nondiscriminatory reason for those decisions." *See Padilla*, 67 F. Supp. 2d at 659; *Dandrige*, 914 F. Supp. at 1402. Having articulated a nondiscriminatory reason for the demotion, the burden then shifts back to Ruffin to establish pretext.

Pretext can be established by showing that "'the proffered explanation is false or unworthy of credence.'" *Allen v. Radio One of Tex. II, L.L.C.*, 515 F. App'x 295, 299 (5th Cir. 2013) (quoting *Laxton*, 333 F.3d at 578). Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a question for the fact-finder. *Lavigne v. Cajun Deep Found., LLC*, No. 12-00441-BAJ-SCR, 2014 WL 3420778, at *9 (M.D. La. July 10, 2014) (citing *Alvarado*, 492 F.3d at 611). At deposition, Ruffin testified that when the 3rd Crumb Unit was shut down in August or October 2009, he and several other workers were demoted from B-operator to C-operator positions. *See* Docket No. 76, Exhibit 9, Page 18. According to Ruffin, however, Cooper, a less-senior white employee, was permitted to continue working as a B-operator in the Crumb Unit in contravention of the seniority system outlined in the CBA. *Id.* Indeed, Firestone's seniority list appears to show that Ruffin was more senior than Cooper. *See* Docket No. 76, Exhibit 4, Page 53. Ruffin is listed in the USW seniority list as having started his employment on March 9, 2000, while Cooper started

on August 1, 2000.  *Id.*  In essence, Ruffin argues that he should have retained the B-operator

position while Cooper should have been demoted to the C-operator position.

The EEOC's letter to Plaintiffs, however, tells a different story.  On February 10, 2012,

the EEOC stated:

> Within the ranks of previous 3rd Crumb employees, we noticed several instances
> of comparative evidence that would not support disparate treatment theory.  This
> included, but was not limited to, the apparent demotions and pay reductions for
> Troy Smith, Travis White, Kyle Askew, Susan Teal, Murray Mooreland, James
> Cooper, Johnny Gaspard, Craig Allen, James Shuts, Shane Frillou and Chad
> Piletere.  All of these white employees had similar seniority dates as the Charging
> Parties and were all similarly demoted in pay as the Charging Parties.

*See* Docket No. 64, Exhibit 4.[12]  The court is unaware of any additional evidence in the record

regarding whether Cooper was, in fact, demoted or if he retained his position, as asserted by

Ruffin.

The conflicting evidence in the record, when viewed in its totality and in the light most

favorable to Ruffin, is sufficient to create a genuine issue of material fact as to whether Ruffin was

demoted in a discriminatory manner.  Therefore, summary judgment is denied as to this claim.

c.      Statute of Limitations

Plaintiffs' "discriminatory demotion" claims are also discrete acts.  *Pegram*, 361 F.3d at

280 ("After *Morgan*, a one-time employment event, including . . . dismissals and demotions, is

a discrete action that 'constitutes a separate actionable unlawful employment practice . . . .'")

(quoting *Morgan*, 536 U.S. at 114).  As a result, Plaintiffs must likewise have filed their charges

---

[12] The court has not been provided the records the EEOC evidently relied upon in determining that
Cooper was "similarly demoted . . . as the Charging Parties."  Firestone has not supplied the court with
any evidence indicating whether Cooper was demoted when the Crumb Unit closed.

of discrimination with the EEOC within 300 days of when any alleged "discriminatory demotion" occurred. 42 U.S.C. § 2000e-5(e)(1).

Here, the sole remaining discriminatory demotion claim—S. Johnson's 2008 claim—is time-barred. S. Johnson fails to direct the court to any evidence specifying the date(s) on which his alleged "discriminatory demotion" occurred. In his EEOC charge, S. Johnson claims that he was "demoted from an A-Operator to a B-Operator" in October 2008.

S. Johnson's charge of discrimination was filed on December 3, 2009, more than 300 days after the demotion took place. As a result, this claim is time-barred.

Moreover, even if S. Johnson's claim was not barred by limitations, it would suffer the same fate as the claims lodged by the Discriminatory Demotion Plaintiffs. Firestone articulated a nondiscriminatory reason for demoting S. Johnson, and S. Johnson has proffered no evidence to suggest that Firestone's reason was pretextual. Thus, Firestone is entitled to summary judgment as to this claim.

### 4. Denial of Overtime

Plaintiffs assert that, in general, employees "receive more compensation from more training because they receive more overtime opportunities, more compensation from being trained in at least three jobs in their part of the plant and increased opportunities for promotion." Firestone does not address Plaintiffs' "denial of overtime" claims.

At deposition, Greg Defrates ("Defrates"), the plant manager, stated that "only A Operators" receive training for specific jobs based on a seniority-based system. *See* Docket No. 76, Exhibit 15, Page 57. B and C-level Operators, by contrast, are not provided training based on seniority but are instead provided training depending on "what the needs [are] in the plant and who is available to train." *Id.* at 59. Defrates also explained that an employee could receive

41

overtime pay in a position if he is "trained and qualified in a given job and there's overtime in that area." *Id.* at 71. Moreover, Defrates agreed with Plaintiffs' counsel that "the more jobs [Plaintiffs] would be qualified for, the greater chance of [them] getting overtime." *Id.* at 73. When asked whether having additional overtime opportunities might change the amount of money an employee could bring home, Defrates replied, "Certainly." *Id.* Accordingly, Plaintiffs argue that they were denied overtime because they were denied the training necessary to be considered for opportunities to earn overtime.

As previously explained, Title VII was designed to address only "adverse employment action[s]" that consist of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Pegram*, 361 F.3d 272 at 282. Not every decision made by an employer constitutes an ultimate employment decision. *Preston*, 222 F. App'x at 358 (quoting *Dollis*, 77 F.3d at 781-822). Whether a "denial of overtime" constitutes an "adverse employment action" has been the subject of considerable debate within the Fifth Circuit.

Though the court is unaware of any binding, reported Fifth Circuit precedent holding that "denial of overtime" claims constitute adverse employment actions, substantial persuasive authority for that proposition exists. In *Johnson v. Manpower Prof'l Serv., Inc.*, the court held that "[d]enial of overtime pay is an adverse employment action because it relates to [plaintiff's] compensation." 442 F. App'x 977, 982 (5th Cir. 2011) (citing *Shannon v. Bell Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (holding that denial of the opportunity to work overtime is an adverse employment action sufficient to make out a *prima facie* case under Title VII)); *but see Hart v. Life Care Ctr. of Plano*, 243 F. App'x 816, 818 (5th Cir. 2007) (holding that a "denial of overtime" claim did not "constitute an ultimate employment decision."). Several district courts have similarly recognized that denial of overtime opportunities may constitute an adverse

employment action. *See Phongsavane v. Potter*, No. CIVASA-05-CA-0219-XR, 2005 WL 1514091, at *3 (W.D. Tex. June 24, 2005); *Ellis v. Crawford*, No. Civ. A. 3:03-CV-2416D, 2005 WL 525406, at *7 (N.D. Tex. Mar. 3, 2005); *Hadad v. Am. Airlines, Inc.*, No. Civ. A. 300-CV-0041-D, 2003 WL 292170, at *7 (N.D. Tex. Feb. 7, 2003).

Recognizing the disagreement among courts concerning this issue, and mindful of the Fifth Circuit's directive that an ultimate employment decision must effect a material change in the terms or conditions of employment, the court finds the evidence adduced here is sufficient to render a "denial of overtime" claim an adverse employment action because "it relates to [Plaintiffs'] compensation." *Johnson*, 442 F. App'x at 982. The court, however, need not further analyze these claims under Title VII because Plaintiffs failed to exhaust their administrative remedies. As previously stated, "Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain*, 519 F.3d at 273 (citing *Pacheco*, 448 F.3d at 788).

In this instance, Plaintiffs' EEOC charges make no mention of any denial of overtime. Indeed, Plaintiffs failed to mention or even allude to any facts in their EEOC charges that would have put the EEOC or Firestone on notice about the possibility of claims for denials of overtime. Consequently, Plaintiffs' "denial of overtime" claims cannot be deemed to fall within the scope of the investigation that reasonably could have been expected to grow out of their EEOC charges. As a result, Plaintiffs failed to exhaust their administrative remedies and are now foreclosed from pursuing them in this forum. *See Waters v. City of Dallas*, 540 F. App'x 257, 261 (5th Cir. 2013) (affirming district court's dismissal of plaintiff's "denial of overtime" claim because plaintiff failed to exhaust his administrative remedies); *Webster v. Chertoff*, No. 3:06-CV-438-M, 2008 WL 4791584, at *3 (N.D. Tex. Oct. 27, 2008) (granting summary judgment in favor of defendant as

to plaintiff's "denial of overtime" claim because plaintiff failed to exhaust his administrative remedies).

5.    Hostile Work Environment

The words "hostile work environment" do not appear in Plaintiffs' First Amended Complaint. Nonetheless, in their response to Firestone's motion for summary judgment, Plaintiffs state their "main argument" is that "[t]his entire case can be summed up in the little words 'hostile work environment.'"[13] Plaintiffs' First Amended Complaint lists a number of events that, according to Plaintiffs, amount to a hostile work environment: (1) Firestone supervisors' calling the control room the "White House;" (2) supervisor David Hinson ("Hinson") stating that "as long as [Hinson] ran the unit, there will be no blacks in that control room;" (3) Brooks's attempting to use the restroom at the control room and being told that he was not allowed to use that restroom on account of his race; (4) a miniature hangman's noose being placed inside Spencer's hard hat at work; (5) the upside-down hanging of the American flag outside the plant, ostensibly to protest President Obama's 2009 inauguration; (6) Firestone management allowing employees to paint black faces on valves in the plant; and (7) video monitors projecting images depicting blacks with afros performing various cleaning duties.

Firestone's argument is twofold. First, it asserts that Plaintiffs' "hostile work environment" claims fail because they were never alleged in Plaintiffs' First Amended Complaint. According to Firestone, Plaintiffs failed "to give the defendant fair notice of what the claim is and the grounds upon which it rests[]" as required under Rule 8 of the Federal Rules of Civil

---

[13] Plaintiffs' "main argument" seems to have shifted during the course of litigation. During Defrates's deposition, Plaintiffs' counsel stated, "The reason we're here and the nature of my suit is in training. . . . Do you understand that's what my lawsuit is about?" *See* Docket No. 76, Exhibit 15, Pages 29-30.

Procedure. Second, Firestone maintains that Plaintiffs are barred from bringing hostile work environment claims under Title VII because Plaintiffs failed to exhaust their administrative remedies. Once again, Plaintiffs do not respond to Firestone's arguments.

Employment discrimination cases are not subject to a heightened pleading standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Harvey v. M.L. Smith, Jr., Inc.*, No. 07-1379, 2008 WL 2282178, at *2 (W.D. La. Apr. 29, 2008); *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 661 (E.D. Tex. 2008). The Supreme Court has made it clear that a plaintiff in an employment discrimination case need not plead a *prima facie* case in his complaint. *See Swierkiewicz*, 534 U.S. at 508. "Rather, a plaintiff need only follow Rule 8's command that a complaint contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Kelso v. Paulson*, No. 3:08-CV-0961, 2009 WL 972997, at *6 (N.D. Tex. Apr. 9, 2009) (quoting FED. R. CIV. P. 8(a)(2)). "Rule 8 thus sets out a 'low bar' to evaluate the sufficiency of a claim, requiring only that a plaintiff's pleadings '"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."'" *Gilbert v. Outback Steakhouse of Fla. Inc.*, 295 F. App'x 710, 713 (5th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396 (5th Cir. 2005) (quoting *Swierkiewicz*, 534 U.S. at 512)); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (citing *Conley*, 355 U.S. at 47). So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it "fails to categorize correctly the legal theory giving rise to the claim." *Homoki*, 717 F.3d at 402 (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)). Rule 8 reflects the basic philosophy of the Federal Rules that simplicity, flexibility, and the absence of

legalistic technicality are the touchstones of a good procedural system. 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1217 (2014).

On the other hand, "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera*, 429 F.3d at 113 (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). A plaintiff cannot rely on raising a hostile work environment claim at the summary judgment stage to avoid an adverse judgment. *Waters v. City of Dallas*, No. 3-11-CV-0540-K, 2012 WL 53632426, at *22 (N.D. Tex. Nov. 1, 2012), *aff'd*, 540 F. App'x 271 (2013); *Brook v. Equilon Enters. LLC*, No. 4:09-CV-02418, 2011 WL 13658, at *10 (S.D. Tex. Jan. 3, 2011); *Mercer v. N.C. Dep't of Transp.*, No. 5:09-CV-379-FL, 2010 WL 5890394, at *11 (E.D. N.C. Dec. 23, 2010). At issue, then, is whether Plaintiffs' Amended Complaint provided Firestone fair notice of its hostile work environment claim despite Plaintiffs' failure to use those specific words. The court concludes that it does.

While Plaintiffs' Amended Complaint is no model of clarity, it outlines facts sufficient to have put Firestone on notice of their hostile work environment claims. *See Perches v. Elcom, Inc.*, 500 F. Supp. 2d 684, 690 (W.D. Tex. 2007) (finding that although Plaintiff's complaint did not expressly bring a hostile work environment claim, the facts alleged were sufficient to support a hostile work environment claim). Indeed, allegations involving black face, a noose, and other racially-offensive practices comprise nearly an entire page of Plaintiffs' Amended Complaint. Those allegations would be unnecessary to establish Plaintiffs' other claims, and thus largely irrelevant to the case at hand, but for the existence of a hostile work environment claim. At the very least, Plaintiffs' allegations should have provided Firestone sufficient reason to move for a more definite statement under Rule 12(e) before responding. *See United States v. Students*

*Challenging Regulatory Agency Procedures*, 412 U.S. 669, 690 n.15 (1973) ("if [lack of specificity in complaint] were really a problem, the [complaining party] could have moved for a more definite statement . . . .").

Although Plaintiffs' Amended Complaint meets the minimum notice pleading requirements to allege a hostile work environment claim, it nevertheless fails because Plaintiffs did not exhaust their administrative remedies under Title VII.

Indeed, Plaintiffs' EEOC charges allege only failures to train, failures to promote, and discriminatory demotions. The charges do not mention or even allude to any facts that would have put the EEOC or Firestone on notice about the possibility of a hostile work environment claim. Consequently, Plaintiffs' hostile work environment claims cannot be deemed to fall within the scope of the investigation that reasonably could have been expected to grow out of their EEOC charges. As a result, Plaintiffs failed to exhaust their administrative remedies before the EEOC. Summary judgment, therefore, is warranted as to these claims.

B.    42 U.S.C. § 1981

"Section 1981 provides that all persons in the United States shall have the same contractual rights as 'white citizens.'" *LaPierre*, 86 F.3d at 448 n.2 (citing 42 U.S.C. § 1981(a)). More specifically, § 1981 states that every person in the United States shall have the same rights as white citizens regarding "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475 (2006); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 359 (5th Cir.), *cert. denied*, 540 U.S. 1035 (2003); *Felton v. Polles*, 315 F.3d 470, 479-80 (5th Cir. 2002); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1049 (5th Cir. 1998). Section 1981 further provides that these rights "are

protected against impairment by nongovernmental discrimination and impairment under color of State law." The substantive analysis for discrimination claims asserted under both Title VII and § 1981 is virtually identical. *Jones*, 427 F.3d at 992 (citing *Raggs*, 278 F.3d at 468). Two differences between the two statutes, however, are their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies. *Jones*, 427 F.3d at 992; *see Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001).

Plaintiffs' § 1981 claims can likewise be divided into the same five categories: (1) failure to train; (2) failure to promote; (3) discriminatory demotion; (4) denial of overtime; and (5) hostile work environment. Firestone responds, respectively, that Plaintiffs' "failure to train" claims fail because they do not involve an adverse employment action; the "failure to promote" claims are time-barred and/or were the result of nondiscriminatory provisions in the CBA; that nondiscriminatory reasons account for any demotions; and that Plaintiffs failed to plead hostile work environment claims. Firestone does not directly address Plaintiffs' "denial of overtime" claims. Plaintiffs respond that their § 1981 claims are not time-barred. Moreover, Plaintiffs appear to assert that their charts show that Firestone's nondiscriminatory justifications are pretextual.

1.      Failure to Train

Plaintiffs' § 1981 "failure to train" claims are dismissed for the same reasons articulated in the aforementioned Title VII "failure to train" section. In short, "failure to train" claims do not involve an adverse employment action, and summary judgment is proper.

2.      Failure to Promote

Plaintiffs allege that they were denied promotions on account of their race in violation of § 1981. As with the Title VII claims, Firestone argues that Plaintiffs' § 1981 "failure to promote"

claims are barred by a two-year statute of limitations. Firestone alternatively asserts that its promotion decisions were made pursuant to the nondiscriminatory seniority provisions outlined in the CBA. Plaintiffs counter that their § 1981 claims are subject to a four-year statute of limitations, and, thus, are not time-barred. To rebut Firestone's nondiscriminatory justification for its promotion decisions, Plaintiffs present their charts.

"When an individual infers discrimination from an employer's failure to promote [him], [courts] apply a modified version of the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas*." *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999). To establish a *prima facie* case of discriminatory failure to promote, a plaintiff must show that:

(1)     he is a member of a protected class;

(2)     he was qualified for the position sought;

(3)     he was rejected for the position; and either

(4)     the employer awarded the position to a person outside the protected class or the employer continued to seek applicants with his qualifications after rejecting the plaintiff.

*Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013) (citing *Prince v. Fed. Exp. Corp.,* 283 F.3d 715, 720 (5th Cir. 2002)); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 324 (5th Cir. 2002); *Celestine*, 266 F.3d at 354-55.

### a.     Statute of Limitations

Like many federal statutes, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, does not contain a statute of limitations. *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 371 (2004). For actions brought under the statute, where the cause of action arises from or was made possible by the 1991 amendments, which expanded the coverage of § 1981 to extend to "all benefits, privileges, terms, and conditions of the contractual relationship," the four-year

limitations period prescribed by the federal "catch-all" statute of limitations controls. *See id.* at 381-83. That statute, enacted on December 1, 1990, provides:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a).

For causes of action based on the pre-amendment language of the statute, which focuses on the making and enforcement of contracts, however, a different limitation period controls, as the court must apply the most analogous Texas statute of limitations, which in this instance is two years. *See Jones*, 541 U.S. at 371 (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)); *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 370 (5th Cir. 2008); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 n.22 (5th Cir. 1994).

Failure to promote claims were actionable under § 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Patterson*, 491 U.S. at 185. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." *Police Ass'n of New Orleans v. City of New Orleans*, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under § 1981 prior to the 1991 amendments and Texas's two-year prescriptive period applies. *Fonteneaux v. Shell Oil Co.*, 289 F. App'x 695, 699 (5th Cir. 2008), *cert. denied*, 555 U.S. 1171 (2009).

Therefore, to ascertain whether the two-year or four-year statute of limitations applies, the court must compare Plaintiffs' positions at the time of the alleged failure to promote with their

would-be positions to determine whether the promotion would have created a new and distinct relationship with Firestone. Unfortunately, neither party points to any evidence in the record that enables the court to make that comparison. Instead, Firestone directs the court to several cases holding that Texas's two-year limitation (or Louisiana's one-year limitation) period applies to § 1981 failure to promote claims. *See Smith v. Aaron's, Inc.*, 325 F. Supp. 2d 716, 723 (E.D. La. 2004) (applying Louisiana's one-year limitations period to a § 1981 failure to promote claim); *Fonteneaux v. Shell Oil Co.*, 2007 WL 7210406, at *2-3 (S.D. Tex. Dec. 14, 2007), *aff'd*, 289 F. App'x 695 (5th Cir. 2008) (applying Texas's two-year limitations period to a § 1981 failure to promote claim).

Firestone's analysis overlooks the fact that in those cases, the courts reached their holdings only after comparing the plaintiff's then-current duties, salaries, and benefits with those incident to the allegedly denied promotion. *See Smith*, 325 F. Supp. 2d at 723 (applying Louisiana's one-year limitations period because plaintiff's promotion would have entailed a raise in salary, additional time commitment, and increased responsibilities); *Fonteneaux*, 2007 WL 7210406, at *3 (applying Texas's two-year limitations period because plaintiff's promotion would have moved plaintiff from a primarily consultative position into a primarily supervisory position that would have extended the plaintiff's responsibilities into areas of sales and procurement).

The CBA lists A, B, and C-level wages as of March 8, 2012. *See* Docket No. 64, Exhibit B, Page 84. Qualified A-level operators were paid $32.34 per hour while qualified B and C-level operators were paid hourly wages of $30.99 and $21.45, respectively. *Id.* While the $9.54 hourly wage differential between B and C-level operators is some evidence of a new and distinct relationship, "'a raise which is accompanied by no significant change in duties and responsibilities does not reach the level of a change in employment relationship protected by § 1981.'" *Scott v.*

*J.E. Merit Constructors, Inc.*, Civ. A. No. 06-915-BAJ, 2012 WL 1711616, at *8 (M.D. La. May 15, 2012) (quoting *Harrison v. Assocs. Corp. of N. Am.*, 917 F.2d 195, 198 (5th Cir. 1990)).

The court is unaware of evidence in the record pertaining to the "duties and responsibilities" of Plaintiffs or of any other employees in the bargaining unit. Thus, there is simply insufficient information for the court to determine whether Texas's two-year statute of limitations applies. As a result, and "out of an abundance of caution," the court will apply the four-year statute of limitations to Plaintiffs' § 1981 "failure to promote" claims. *See Rudolph v. Huntington Ingalls, Inc.*, No. 1:06-CV-820-HSO-JMR, 2011 WL 4350941, at *5 (S.D. Miss. Sept. 15, 2011) ("Out of an abundance of caution, the [c]ourt will apply the longer four year limitations period here.").

### (1).    Brooks

Brooks fails to direct the court to evidence specifying the date(s) on which he was denied a promotion. Firestone notes, however, that at deposition, Brooks stated that he was denied a promotion sometime between 2000 and 2003. *See* Docket No. 76, Exhibit 10, Page 11. His EEOC charge states that he was denied a promotion "in the latter part of 2008."

Because Brooks filed suit on June 29, 2012, his 2000 and 2003 promotion claims are time-barred. Brooks's 2008 claim, however, may not be time-barred and will be analyzed in the following section.

### (2).    Byrd

Byrd fails to direct the court to evidence specifying the date(s) on which he was denied a promotion. Byrd claimed at deposition, however, that he was denied a promotion at a time when a different union, the OCAW, represented workers at the Orange Plant. *See* Docket No. 60, Exhibit 2, Page 60. The OCAW has not represented the bargaining unit at Firestone's Orange

plant since January 4, 1999. *See* Docket No. 60, Exhibit 3. Further, in his EEOC charge, Byrd claims that he was denied a promotion "in the latter part of 2008."

Because Byrd filed suit on June 29, 2012, thirteen years after his 1999 failure to promote, that claim is time-barred. The 2008 claim may not be time-barred and will be analyzed in the following section.

### (3). <u>Greenaway</u>

Greenaway fails to direct the court to evidence specifying the date(s) on which he was denied a promotion. Firestone notes, however, that at deposition, Greenaway alleged that he was denied promotions on seven occasions, once in 2002, twice in 2007, three times in 2008, and once in 2012. *See* Docket No. 61, Exhibit 2, Pages 10, 11, 12, 16, 20, 23, and 29.

Greenaway filed suit on June 29, 2012. As a result, any instances of an alleged "failure to promote" that occurred before June 29, 2008—four years before the complaint was filed—are time-barred. The first three alleged instances of a "failure to promote are therefore barred. The fourth, fifth, sixth, and seventh instances may not be time-barred and will be analyzed in the following section.

### (4). <u>S. Johnson</u>

S. Johnson fails to direct the court to evidence specifying the date(s) on which he was denied a promotion. S. Johnson stated at deposition, however, that he was denied a promotion sometime before 2003. *See* Docket No. 62, Exhibit 2, Page 31. Further, in his EEOC charge, Byrd claims that he was "passed over" for a promotion "in the latter part of 2008."

S. Johnson filed suit on June 29, 2012. As a result, any promotion denial that occurred before June 29, 2008—four years before the complaint was filed—is time-barred. The 2003

incident is clearly barred, as it occurred five years before his June 29, 2008, deadline.  The 2008 claim may not be time-barred and will be analyzed in the following section.

(5).   <u>W. Johnson</u>

W. Johnson  fails to direct the court to evidence specifying the date(s) on which he was denied a promotion.  At deposition, however, W. Johnson alleged that he was denied a promotion in 2004 or 2005.  *See* Docket No. 63, Exhibit 2, Page 16.  Further, in his amended EEOC charge, W. Johnson claims that he was "passed over" for a promotion "in the latter part of 2008."

Because W. Johnson filed suit on June 29, 2012, only incidents that occurred after June 29, 2008, are actionable.  Accordingly, W. Johnson's alleged 2004 and 2005 incidents are time-barred.  The 2008 may not be time-barred and will be analyzed in the following section.

(6).   <u>Ruffin</u>

Ruffin fails to direct the court to evidence specifying the date(s) on which his alleged "failure to promote" occurred.  In his original EEOC charge, Ruffin claims that on August 6, 2009, he was "bypassed" for a B-operator promotion when two white employees with less seniority were promoted ahead of him.  In his amended EEOC charge, Ruffin claims that he was "passed over" for a promotion "in the latter part of 2008."

As previously stated in the Title VII "failure to promote" section, Ruffin's 2009 "failure to promote" claim is better characterized as a discriminatory demotion claim.  Accordingly, it will be analyzed in the "discriminatory demotion" section below.  Ruffin's 2008 claim may not be time-barred and will be analyzed in the following section.

(7).   <u>Spencer</u>

Spencer fails to direct the court to evidence specifying the date(s) on which he was denied a promotion.  In his EEOC charge, Spencer claims that he was "passed over" for a promotion "in

54

the latter part of 2008." This claim may not be time-barred and will be analyzed in the following section.

(8). <u>Guillory</u>

Guillory fails to direct the court to evidence specifying the date(s) on which he was denied a promotion. In his EEOC charge, Guillory claims that he was denied a promotion "in the latter part of 2008." Because it is unclear whether the 2008 claim was filed within the applicable statute of limitations, dismissal on this basis is not warranted. The claim will be analyzed in the following section.

b. <u>Remaining Non-Time-Barred "Failure to Promote" Claims</u>

Firestone does not contest that Plaintiffs have established a *prima facie* case of discrimination with respect to the timely failure to promote claims. Therefore, a presumption of intentional discrimination attaches, and the burden of production shifts to Firestone to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Wallace*, 271 F.3d at 219-20. In order to meet its burden, Firestone refers the court to the "Seniority" provision of the CBA, which states:

Section 1. General

> M. In determining eligibility on a non-craft classification, seniority shall be determining factor provided the employee desiring to fill the opening can qualify to do the work within a reasonable breaking-in period. To be eligible on a non-craft classification, the employee must be capable of performing all duties required on the classification within a reasonable breaking-in period. In the event the employee cannot qualify to do the work within a reasonable breaking-in period, the employee will be returned to work on his former classification, consistent with his seniority.

55

Firestone asserts that its application of the CBA's seniority provision constitutes a "lawful, legitimate, nondiscriminatory reason for [the promotion] decisions." *See Padilla*, 67 F. Supp. 2d at 659; *Dandrige*, 914 F. Supp. at 1402.

The burden therefore shifts to Plaintiffs to show that Firestone's proffered, legitimate, nondiscriminatory reason for failing to promote them was pretextual. Although Plaintiffs never use the word "pretext" in their responsive brief, the court assumes that the three charts attached to Plaintiffs' response constitute their attempt to rebut Firestone's nondiscriminatory justification.

Again, Plaintiffs' charts are non-responsive to their claims. At best, the charts document the training Plaintiffs received, or failed to receive, from 2005-2012. They are completely devoid of information relating to promotions. Specifically, they do not reveal dates on which a given Plaintiff applied for a promotion but was rejected in place of a non-protected class employee. Importantly, the charts also fail to show any evidence of a Plaintiff's applying for and being denied a promotion because of a purported "lack of training."

Accordingly, the charts do not provide evidence of pretext, and the court is unaware of other evidence in the record suggesting that Firestone's reason is pretextual. Plaintiffs thus "fall[] short of [their] burden of presenting evidence rebutting each of the legitimate nondiscriminatory reasons produced by the [employer]." *Wallace*, 271 F.3d at 220. Consequently, summary judgment is appropriate.

### 3. Discriminatory Demotion

Brooks, Greenaway, S. Johnson, W. Johnson, and Ruffin claim that they were discriminatorily demoted. Firestone does not contest that Plaintiffs have established a *prima facie* case of discrimination. In order to meet its burden of articulating a legitimate, nondiscriminatory reason for its adverse employment action, Firestone again refers the court to the aforementioned

"Seniority" provision of the CBA. The burden then shifts to Plaintiffs to offer evidence that Firestone's proffered legitimate, nondiscriminatory reason for demoting them was pretextual.

Brooks's, Greenaway's, S. Johnson's, and W. Johnson's discriminatory demotion claims fail for the same reasons previously discussed in the Title VII analysis. The charts upon which they rely simply provide no information relating to demotions. They do not provide evidence of pretext, and summary judgment is therefore appropriate as to these claims.

Ruffin's 2009 discriminatory demotion claim, by contrast, survives summary judgment for the same reasons set forth in the Title VII analysis. In short, Ruffin's testimony at deposition that he was demoted in contravention of Firestone's seniority system and Firestone's seniority list showing Ruffin to be senior to Cooper create a genuine issue of material fact.

### 4. Denial of Overtime

As with their Title VII claims, Plaintiffs assert that, in general, employees "receive more compensation from more training because they receive more overtime opportunities, more compensation from being trained in at least three jobs in their part of the plant and increased opportunities for promotion." Firestone does not move for summary judgment on Plaintiffs' denial of overtime claims. Accordingly, at this point in the proceedings, these claims survive summary judgment and remain pending.

### 5. Hostile Work Environment

Plaintiffs Brooks, Ruffin, S. Johnson, W. Johnson, and Spencer allege hostile work environment claims under 42 U.S.C. § 1981.[14] Although this section analyzes Plaintiffs' claims

---

[14] It is unclear which Plaintiffs are asserting hostile work environment claims. In Plaintiffs' Response to Defendant's Motion for Summary Judgment (#76), Plaintiffs cited to different depositions to support their claims. Accordingly, the court construes Plaintiffs' citations as indicative of which Plaintiffs are asserting a particular claim.

brought under 42 U.S.C. § 1981, "[c]laims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *Mendoza*, 548 F. App'x at 128 (citing *LaPierre*, 86 F.3d at 448). Therefore, it is appropriate to rely on Title VII cases, and the *McDonnell Douglas* evidentiary framework applies. *Id.*

To establish a racially hostile work environment claim under Title VII, the plaintiff must prove that:

    (1)     he belongs to a protected group;

    (2)     he was subjected to unwelcome harassment;

    (3)     the harassment was based on race;

    (4)     the harassment affected a term, condition, or privilege of employment; and

    (5)     the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 640 (5th Cir. 2014) (citing *Hernandez*, 670 F.3d at 651).

"The court must look at 'all the circumstances,' including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Rodriguez v. Cooper Cameron Valves TBV Techno, Inc.*, No. H-12-0764, 2014 WL 3044797, at *8 (S.D. Tex. July 3, 2014) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993)). To be actionable, the hostile environment must be both objectively and subjectively offensive. *Harris*, 510 U.S. at 23. The employer may avoid liability if it took "prompt remedial action" to protect the claimant. *Id.* (citing *Hockman*, 407 F.3d at 329). What constitutes prompt

remedial action is a fact-specific inquiry and "not every response by an employer will be sufficient" to absolve the employer of liability. *Id.* (quoting *Hockman*, 407 F.3d at 329).

Racially "'discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII.'" *Mire v. Tex. Plumbing Supply Co., Inc.*, 286 F. App'x 138, 141 (5th Cir. 2008) (citing *Harris*, 510 U.S. at 21); *Hernandez*, 670 F.3d at 652. "Hostile work environment" racial harassment occurs when an employer's conduct "'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (quoting 29 C.F.R. § 1604.11(a)). To survive summary judgment on a hostile work environment claim based on race, the nonmovant must create a fact issue as to each of the following elements: "(1) racially discriminatory intimidation, ridicule and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment." *Walker*, 214 F.3d at 625; *accord Harvill*, 433 F.3d at 434. Whether a work environment meets these criteria depends upon the totality of the circumstances. *See Harris*, 510 U.S. at 23; *Harvill*, 433 F.3d at 434; *Hockman*, 407 F.3d at 325; *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005); *Walker*, 214 F.3d at 625.

Moreover, to establish a viable hostile work environment claim, the plaintiff must present "'"more than a few isolated incidents of racial enmity."'" *Jones v. Barnhart*, 349 F.3d 1260, 1268 (10th Cir. 2003) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994), *cert. denied*, 516 U.S. 826 (1995) (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1417-18 (10th Cir. 1987))); *see Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005); *Fortenberry v. Texas*, 75 F. App'x 924, 928 (5th Cir. 2003); *Trujillo v. Univ. of Co. Health Scis. Ctr.*, 157 F.3d

1211, 1214 (10th Cir. 1998). "Title VII 'was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace,' and therefore conduct that only 'sporadically wounds or offends but does not hinder' an employee's performance is not actionable." *Skinner v. Brown*, 951 F. Supp. 1307, 1322 (S.D. Tex. 1996), *aff'd*, 134 F.3d 368 (5th Cir. 1997) (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997)); *see also Hockman*, 407 F.3d at 326; *Alzuraqi v. Grp. 1 Automotive, Inc.*, No. 3:12-CV-223-L, 2013 WL 395536, at *6 (N.D. Tex. Feb. 1, 2013); *E.E.O.C. v. Rock-Tenn Servs. Co., Inc.*, 901 F. Supp. 2d 810, 824 (N.D. Tex. Aug. 22, 2012) (refusing, pursuant to the continuing violation doctrine, to consider an isolated event of verbal abuse to be part of a timely hostile work environment claim). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 755, 788 (1998) (quoting *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998) (citations omitted)); *see Hockman*, 407 F.3d at 328; *Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 874 (5th Cir.), *cert. denied*, 528 U.S. 963 (1999). The "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' would not sufficiently alter terms and conditions of employment to violate Title VII." *Faragher*, 524 U.S. at 787 (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied*, 406 U.S. 957 (1972)); *see Hockman*, 407 F.3d at 328; *Shepherd*, 168 F.3d at 874; *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 329 (5th Cir. 1998), *cert. denied*, 526 U.S. 1051 (1999) (citing *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1295 (5th Cir. 1994), *cert. denied*, 513 U.S. 1149 (1995)). "[E]vidence of 'routinely [made] racist remarks,'" however, may be sufficient to raise

a fact issue to prevent summary judgment. *Walker*, 214 F.3d at 626 (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1049 (5th Cir. 1996)).

a. <u>Brooks</u>

Brooks appears to allege a hostile work environment claim based on a single incident involving a restroom in the Control Room. In his amended response to Firestone's motion for summary judgment, Brooks claims that he "went to use the restroom at the Control Room and was told by the personnel present that I was not allowed to use restrooms in those facilities." At deposition, Brooks asserted that Greg Ballow ("Ballow"), an A-Operator on the 3rd Line, "made a point to ask me not to use that restroom." *See* Docket No. 76, Exhibit 10, Page 57. When asked whether Ballow physically removed Brooks from the restroom, Brooks replied, "No, Sir." *Id.* at 58. When asked to explain the incident in greater detail, Brooks said, "I used the restroom, and I went back to my job." *Id.* at 59. Brooks then described it as an isolated incident that occurred "[o]nly once for me." *Id.* at 60. He did not report it to anyone. *Id.* at 59.

This incident does not rise to the level of "severe or pervasive harassment" for which § 1981 provides relief. Indeed, the incident was isolated and involved no physical threat; he was also not, in fact, precluded from using the restroom. There is no evidence that it interfered with Brooks's work, nor does Brooks make an effort to explain how this was the type of "severe" incident actionable under § 1981. Moreover, there is no evidence that management knew or should have known about the incident. Accordingly, Brooks has failed to establish a *prima facie* case of race discrimination under a hostile work environment theory, and this claim does not survive summary judgment.

b.    <u>Ruffin</u>

Ruffin appears to assert a hostile work environment claim based on company video monitors showing allegedly offensive images.  Specifically, Ruffin stated that in either 2009 or 2010, he saw video monitors depicting "black guys with afros and cartoon characters vacuuming, doing vacuum cleaner work."  *See* Docket No. 76, Exhibit 9, Page 127.  When asked how it "[struck] him," Ruffin responded that he "couldn't believe it" and "reported it to 1-800-harassment."  *Id.* at 127-28.  According to Ruffin, the images were removed shortly thereafter and have not reappeared.  *Id.* at 128.

This single incident does not rise to the level of "severe or pervasive harassment" for which § 1981 provides relief.  *See Frazier v. Sabine River Auth. State of La.*, 509 F. App'x 370, 374 (5th Cir.), *cert. denied*, 134 S. Ct. 727 (2013) (holding that a co-worker's use of the words "nigger" and "Negreet," in plaintiff's presence, as well as a co-worker's "noose gesture," were not severe or pervasive enough to establish a *prima facie* claim for hostile work environment); *Rudolph*, 2011 WL 4350941, at *12 (holding that graffiti on bathroom stalls that read, "You don't have to use a rope to kill a nigger[,] there's a truck and a chain," "[k]ill all niggers," and "[n]iggers smell like dogs," were not physically threatening or humiliating, and, therefore, insufficient to support a hostile work environment claim).   Here, the incident in question was not recurring and involved no physical threat.  There is no evidence that it interfered with Ruffin's work, nor does Ruffin make an effort to explain how this was the type of "severe" incident viable under § 1981.  Moreover, the record shows that management took prompt action to remedy the problem.  Accordingly, Ruffin fails to establish a *prima facie* case of race discrimination under a hostile work environment theory.

c.      S. Johnson

S. Johnson appears to assert a hostile work environment claim based on the "plant management allow[ing] employees to paint black faces on valves in the plant." When asked during his deposition whether he had "ever seen black faces painted on valves at the plant," S. Johnson stated, "No, but in the bathroom I have." *See* Docket No. 76, Exhibit 13, Page 108. When asked to provide a "verbal description of the black faces," S. Johnson stated, "They would just draw a bunch of black faces and put some kind of a slur . . . ." *Id.* at 109. S. Johnson recalled seeing comments in the bathroom about President Obama stating "how the country gonna . . . go down since we got a black president." *Id.* at 110-11. S. Johnson was unable to recall any other specific content regarding any of the alleged pictures or slurs in the bathroom. S. Johnson claimed that he told the foreman about the images but that the foreman "waited a while before he painted [over them]." *Id.* at 110.

These incidents do not rise to the level of "severe or pervasive harassment" for which § 1981 provides relief. *See Fairley v. Huntington Ingalls, Inc.*, No. 1:06-CV-785-HSO-JMR, 2011 WL 4350882, at *15 (S.D. Miss. Sept. 15, 2011) (holding that racially offensive graffiti inside a bathroom stall that was not specifically directed at plaintiff was insufficiently severe and pervasive to support a hostile work environment claim); *Johnson v. Northrop Grumman Shipbuilding, Inc.*, No. 1:06-CV-797-JHSO-JMR, 2011 WL 1045444, at *6 (S.D. Miss. Mar. 17, 2011) (holding that racially derogatory writings, depictions, and graffiti, seen on numerous occasions by plaintiff in bathroom stalls, was insufficient to support a hostile work environment claim). Here, the incidents appear to have been confined to a single restroom, involved no physical threat, and were not directed at S. Johnson. There is no evidence that they interfered with S. Johnson's work, nor does S. Johnson make an effort to explain how they constitute the

types of "severe" incidents actionable under § 1981. Accordingly, S. Johnson fails to establish a *prima facie* case of race discrimination under a hostile work environment theory, and summary judgment is warranted as to this claim.

d.     <u>W. Johnson</u>

W. Johnson appears to assert a hostile work environment claim based on an incident that allegedly occurred in 2009, wherein a "United States flag in front of the Firestone Orange Plant was hung upside down ostensibly to protest President Obama's election." W. Johnson directs the court to pages 76-77 of his deposition, presumably to provide details of the alleged incident. The court was unable to locate any references to an upside-down flag on those pages. On page 80 of his deposition, however, when W. Johnson is asked to explain the flag incident, he stated, "Just the flag hanging upside down." When asked whether he reported it to anyone, W. Johnson replied, "No." *Id.* at 80.

The upside-down hanging of an American flag does not rise to the level of "severe or pervasive harassment" for which § 1981 provides relief. Indeed, the single incident involved no physical threat and was not directed at W. Johnson. There is no evidence that it interfered with W. Johnson's work, nor does he make an effort to articulate how this was the type of "severe" incident viable under § 1981. Moreover, even if the flag was flown upside-down to protest President Obama, that does not necessarily mean that the protest was racially motivated. Indeed, a number of non-black American presidents have encountered protests from dissatisfied

constituents.[15]  Accordingly, W. Johnson fails to establish a *prima facie* case of race discrimination under a hostile work environment theory, and summary judgment is warranted as to this claim.

e.    Spencer

Spencer appears to allege a hostile work environment claim based on a single incident in which he found a "miniature hangman's noose placed inside his hard hat at work." During his deposition, Spencer stated that his "hardhat was sitting on top of the locker and . . . [t]here was a hangman noose in it." *See* Docket No. 76, Exhibit 11, Page 142.  Spencer described the miniature noose as "about a centimeter thick" and about "8 inches long." *Id.* at 144.  Spencer claimed that nobody was with him when he found the noose and that he "took it home" because he "didn't want to start anything on the job." *Id.* at 147.  Spencer said he never showed it to any of his coworkers and that none of the other seven Plaintiffs came over to his house to look at it. *Id.* at 147.  Further, Spencer stated that he never told a supervisor about the incident. *Id.* at 148.

Under the proper circumstances, the presence of a noose at the workplace might constitute an "extremely serious" event causing a discriminatory change in the terms and conditions of one's employment. *Hudson v. Cleco Corp.*, 539 F. App'x 615, 620 (5th Cir. 2013).  "The [c]ourt does not feel the need to explain that the presence of a noose can certainly be considered harassment

---

[15] *See Wood v. Moss*, 134 S. Ct. 2056, 2061 (2014) (discussing demonstrators lining up outside a restaurant to protest President George W. Bush's policies); *Mahoney v. Babbitt*, 105 F.3d 1452, 1453 (D.C. Cir. 1997) (describing how demonstrators attempted to protest President Clinton's policies during his second inaugural parade); *Ethredge v. Hail*, 996 F.2d 1173, 1174 (11th Cir. 1993) (listing plaintiff's bumper stickers that were critical of Presidents George H.W. Bush and Reagan); *McGurran v. Veterans Admin.*, 665 F.2d 321, 322 (10th Cir. 1981) (describing union demonstrators' distribution of caricatures of President Carter to protest his proposed limits on federal salary increases); *Glasson v. City of Louisville*, 518 F.2d 899, 900 (6th Cir.), *cert. denied*, 96 S. Ct. 280 (1975) (explaining that a demonstrator waited for President Nixon's motorcade to drive by so she could hold up a poster criticizing his administration's foreign policy); *United States v. Kroncke*, 459 F.2d 697, 699 (8th Cir. 1972) (detailing objections defendants had to the Military Selective Service Act of 1967 and President Johnson's foreign policy in Vietnam).

by African-American [] employees." *Cargo v. Kan. City S. Ry. Co.*, No. 05-2010, 2012 WL 1014707, at *6 (W.D. La. Mar. 22, 2012). Here, however, based on the evidence provided, the court does not find that this noose had the effect of altering the terms, conditions, or privileges of [Spencer's] employment. As an initial matter, the court notes that this seems to have been an isolated incident. It is unclear who placed the noose in Spencer's hardhat, and Spencer proffers no evidence to suggest how the presence of the noose affected his employment. Perhaps most importantly, there is no evidence to suggest that Firestone knew or should have known about this incident. Indeed, Spencer admits that he never told a supervisor about the noose.

Moreover, while not making light of this incident, the court notes that other district courts have granted summary judgment on hostile work environment claims involving far more serious incidents involving a noose. *See Carter v. Luminant Power Servs. Co.*, No. 3:10-CV-1486-L, 2011 WL 6090700, at *30 (N.D. Tex. Dec. 6, 2011); *Filer v. Donley*, No. 4:10-CV-310-A, 2011 WL 196169, at *7 (N.D. Tex. Jan. 20, 2011), *rev'd on other grounds*, 690 F.3d 643 (5th Cir. 2012) (granting summary judgment against employee whose supervisor publicly displayed a noose in his office because no rational jury could find an abusive work environment when the plaintiff viewed the noose only once for a matter of a few minutes); *Jimerson v. Garrett Aviation Servs., LLC*, No. H-09-0790, 2010 WL 5067692, at *1, 4-5 (S.D. Tex. Dec. 6, 2010) (holding that a rope in the shape of a noose hanging from the rafters at the plaintiff's workplace, that a coworker stated was to "wrap around [the] [p]laintiff's neck," was insufficient to support a hostile work environment claim, as the incident was isolated and unaccompanied by physical contact, and the plaintiff did not flee or seek help).

For these reasons, Spencer fails to establish a *prima facie* case of race discrimination under a hostile work environment theory, and summary judgment is warranted as to this claim.

C.    ADA

Greenaway claims that Firestone discriminated against him as a result of a hearing disability in violation of the ADA. Specifically, Greenaway alleges that he was demoted to a C-Operator position because "[t]he plant refused to pay for hearing implants and refused to allow [Greenaway] to wear a hearing aid inside the control room." Firestone responds that Greenaway's ADA claim is unavailing because "Greenaway has never raised, and the EEOC has never investigated or addressed, any claim of alleged disability discrimination." Greenaway does not counter Firestone's argument.

To maintain a claim under Title I of the ADA, as with a claim under Title VII of the Civil Rights Act, an aggrieved employee must file a timely charge of discrimination with the EEOC or equivalent state agency and receive a right-to-sue letter prior to filing suit in federal court. *See Dao*, 96 F.3d at 788-89; *Wagner*, 939 F. Supp. at 1308. In a deferral state such as Texas, the employee must file his charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000); *Webb*, 139 F.3d at 537; *Griffin*, 26 F.3d at 612-13; *Anson v. Univ. of Tex. Health Sci. Ctr.*, 962 F.2d 539, 540 (5th Cir. 1992); *Thibodeaux v. Transit Mix Concrete & Materials Co.*, 3 F. Supp. 2d 743, 745 (E.D. Tex. 1998).

Here, Greenaway concedes that he has filed only one EEOC charge against Firestone and that it contains no reference to any alleged hearing disability. *See* Docket No. 61, Exhibit 2, Page Nos. 83-84. Accordingly, Greenaway has failed to exhaust his administrative remedies as required under the ADA, and his claim does not survive summary judgment.

D.    Executive Order 11246

Plaintiffs allege that Firestone discriminated against them in violation of Executive Order 11246.    Executive Order 11246 prohibits federal contractors and subcontractors from discriminating on the bases of race, color, religion, sex, and national origin.  *See* 42 U.S.C. § 2000e note.  Firestone responds that Executive Order 11246 does not create a private cause of action.    Plaintiffs cite no case law to support their claims and, once again, fail to address Firestone's argument.

Because Plaintiffs did not address their cause of action under Executive Order 11246, they appear to have abandoned this alleged ground for recovery.  Indeed, because Plaintiffs did not brief these claims in their responsive brief, any claims by Plaintiffs seeking recovery under Executive Order 11246 have been waived and are no longer at issue.  *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007)  (stating that inadequately briefed issues are considered waived); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 525-26 (5th Cir. 2005); *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir.), *cert. denied*, 543 U.S. 979 (2004); *United States ex rel. Phillips v. L-3 Commc'ns Integrated Sys., L.P.*, No. 3:10-CV-1784, 2012 WL 3649699, at *9 (N.D. Tex. Aug. 24, 2012) (treating relator's conspiracy claim abandoned where he failed to respond to motion to dismiss); *Moore v. Delta Airlines, Inc.*, No. 3:10-CV-2241, 2012 WL 685414, at *5 (N.D. Tex. Mar. 1, 2012) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)) (holding that the plaintiff abandoned any claims not addressed in her summary judgment response); *Penrod v. Bank of N.Y. Mellon*, 824 F. Supp. 2d 754, 762-63 (S.D. Tex. 2011); *Edwards v. Tex.-N. M. Power Co.*, 259 F. Supp. 2d 544, 547 (N.D. Tex. 2003).

Even assuming Plaintiffs' claims were not waived, however, these claims must be rejected because Executive Order 11246 "does not afford a private right of action to employees." *Trevino-Garcia v. Univ. of Tex. Health Sci. Ctr.—Sch. of Med.*, No. SA-09-CA-0572-XR, 2009 WL 5195962, at *4 (W.D. Tex. Dec. 21, 2009) (citing *Thomas v. Choctaw Mgmt./Servs. Enter.*, 313 F.3d 910, 912 n.8 (5th Cir. 2002)); *accord Pena v. USAA Fed. Savs. Bank*, 212 F.3d 594, 594 (5th Cir. 2000) (affirming dismissal of *pro se* claim by former employee against USAA because Executive Order 11246 provides no private right of action).

Consistent with these authorities, Plaintiffs reliance on Executive Order 11246 is unavailing. Summary judgment is therefore mandated on this cause of action.

III.    Conclusion

Based on the foregoing analysis, Firestone's motions for summary judgment are granted in part and denied in part. Ruffin's 2009 Title VII and § 1981 discriminatory demotion claims, as well as Plaintiffs' Title VII and § 1981 denial of overtime claims, survive summary judgment and may proceed to trial. As to Plaintiffs' other claims, there remain no material facts in dispute, and Firestone is entitled to judgment as a matter of law.


SIGNED at Beaumont, Texas, this 24th day of September, 2014.


MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE